### State of Vermont v. John A. Covell

[453 A.2d 1118]

No. 82-057

Present: Billings, Hill, Underwood and Peck, JJ., and Daley, J. (Ret.), Specially Assigned

Opinion Filed November 2, 1982

*Christopher Baril,* Rutland County Deputy State's Attorney, Rutland, for Plaintiff-Appellee.

*Peter F. Langrock* and *James Swift* of *Langrock Sperry Parker & Wool,* Middlebury, for Defendant-Appellant.

**Peck, J.** Defendant was tried by jury and found guilty of three violations of the state motor vehicle code: attempting to elude a police officer, 23 V.S.A. § 1133; driving while his license was suspended, 23 V.S.A. § 674; and careless and negligent operation, 23 V.S.A. § 1091. Judgment on the verdict was entered and defendant appealed to this Court. We affirm.

The sole question presented here for review is whether the judge who presided only at the jury drawing, and later, the trial judge, committed reversible error in denying defendant's motions for a mistrial based on the first judge's inadvertent mention to the prospective jurors that the second count, driving under suspension, "is alleged to be a subsequent offense." Defendant protected the issue properly for purposes of this appeal.

During a bench conference between the judge and counsel relating to the inadvertent disclosure and defendant's initial motion for a mistrial, the judge offered to make a curative statement to the jury panel. This offer was declined by defense counsel; nevertheless, the judge did give the following curative instruction:

> [T]he Court's reference to any other offense as far as a driving license suspended charge, which is the second count of the information, was a mistake. It is inadvertent. The only charge before the Court on the second count of the information is that the Defendant in the manner alleged drove with a suspended license on April 24, 1981.

At the conclusion of this statement defendant objected; his counsel expressed the view that it "merely highlights the problem [of prejudice] and creates a worse problem for the client." Counsel had already argued to the court that information indicating an earlier, similar offense (in fact it appears there had been three previous convictions) was highly prejudicial to his client.

The motion for mistrial is directed to the sound discretion of the court. *State* v. *Lawrence*, 137 Vt. 597, 601, 409 A.2d 997, 999 (1979). There is no abuse of discretion unless the party claiming it establishes a total failure to exercise discretion, or its exercise upon grounds that are clearly untenable or unreasonable. Furthermore, in order to constitute reversible error, it must appear affirmatively that a denial of the motion has resulted in prejudice to the moving party, with the burden of proof being on the movant. Finally, the existence of prejudice depends on the facts of each case. We must, therefore, review the matter before us as a totality, that is, within the context of the entire proceedings. *Id.* We will not isolate the denial and consider it in a vacuum, divorced from the totality of the facts and background of the whole case in which it occurred.

In the instant case the primary factual dispute related to the identification of defendant as the operator of the motor vehicle. The arresting officer testified that the defendant was the sole occupant and operator of a 1971 station wagon when

he stopped the vehicle for a traffic violation in Rutland City at approximately 10:30 p.m. on April 24, 1981. Defendant produced an expired operator's license bearing his name which the officer retained.

The officer started to walk back to his cruiser, intending to run a check on the license, whereupon the defendant put his car in gear and drove off at a high rate of speed. The officer followed in the cruiser, and a high speed chase ensued, ending finally when the officer again managed to stop the vehicle, and again he identified defendant as the sole occupant and operator. An official of the Department of Motor Vehicles testified on behalf of the State that defendant's license to operate was under suspension on that date.

Under defendant's version of the facts he was only a passenger in the car, although he conceded he was the owner. The operator was a man, whose name he did not know, who had approached him a short time before in a bar on a matter of business. He testified further that his expired license was taken from him at the police station, not at the site of the initial stop. When his vehicle was halted the second time, following the pursuit, defendant claimed the mysterious stranger slipped out of the car and vanished forever without being seen by the officer, or any of the other police who had joined the pursuit in response to a radio call for assistance and were now on the scene. Finally, he claimed that he shifted quickly into the driver's seat for the sole purpose of moving the vehicle to the side of the road.

Defendant also produced two witnesses who claimed to have seen him leave the bar one evening with an unidentified man, and to have seen the two drive away together with the stranger driving. These witnesses described the unknown as having some physical characteristics, particularly long hair, general build and dress, resembling the defendant. Neither was certain of the exact date they had seen the two men together beyond an approximation which could have included the evening in question.

The record on appeal is devoid of evidence that defendant had ever made an effort to locate his will-o'-the-wisp companion of the evening. For whatever significance it may have, we are unable to find that the presence of this alleged *deus ex machina* as the driver was explained to the authorities when

defendant was arrested or at any time later prior to trial. We recognize of course that defendant was under no obligation to say anything, even if it might have enhanced his later credibility had he done so.

The credibility of the arresting officer's straightforward account of the events of April 24, 1981, seems to us so overwhelming, notwithstanding minor inconsistencies, some of which were clearly slips of the tongue under the pressure of a determined cross-examination, and relevant only in relation to credibility, as to overcome any likelihood of prejudice created by the inadvertent disclosure that a "subsequent" offense had been charged.

Truth may be, and probably often is, stranger than fiction. Nevertheless, defendant's story leaves more than just a swearing contest; in its totality it borders on the incredible. He asked the jury to accept the presence of a man who never identified himself, and whose name defendant did not ask even though they first met a few minutes earlier on a business matter. The story postulates a mistake in identification by the officer at the first stop although the officer and driver were within a few feet of one another at the most, and the driver's window was rolled down.

Other elements of defendant's claim: the disappearance of the driver in a vanishing act of which Harry Houdini might have been proud; the absence of any evidence that defendant had even tried to locate this person; his failure to explain to the police that he was not the driver, at a time when it would have been very logical for him to have done so, or at any time thereafter; and finally, the fortuitous physical resemblance of the stranger and defendant, are all so pat and convenient that the jury would be entirely justified in rejecting it as contrived, quite independently of any possible prejudice. Clearly that was the reaction of the jurors.

It remains to comment briefly on the court's curative statement. Defendant objected to it before and after it was made, thereby adroitly protecting for review his claim of error and prejudice against any argument of waiver or acquiescence that would weaken the merits of his demands for a mistrial.

We will not presume that the jury ignored the curative admonition of the court. On the contrary, "[i]t is pre-

sumed that the jury followed the instructions." *State* v. *Fisher*, 134 Vt. 339, 341, 360 A.2d 102, 104 (1976) ; *Lewis v. Gagne*, 123 Vt. 217, 219, 185 A.2d 468, 470 (1962). In a similar vein, an erroneous statement by a court may be cured by "an instruction given expressly to correct or modify language previously used by the court." *State* v. *Foss*, 100 Vt. 32, 35, 134 A. 636, 637 (1926).

■ Particularly relevant to the case at bar, although it involved an improper statement by one of the attorneys, subsequently withdrawn, but followed by a cautionary instruction by the trial court, is the following holding in a 1915 case: "If the statement was unwarranted and the withdrawal and court's caution did not cure the harm, (which we find no occasion to question), it was rendered harmless by the subsequent events of the trial." *Gilfillan* v. *Gilfillan's Estate*, 90 Vt. 94, 97, 96 A. 704, 706 (1916). Such, we hold, is the case here. So overwhelming is the credibility of the State's case, and so unlikely the several remarkable coincidences of the defendant's evidence, that the totality of the events of the trial as a whole rendered the inadvertency harmless. Prejudice has not been clearly demonstrated, and we believe it is most unlikely. Accordingly, we hold there was no abuse of discretion in the court's denial of defendant's motions for a mistrial.

*Affirmed.*