### State of Vermont v. Edward Foy

[475 A.2d 219]

No. 82-511

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed January 27, 1984

Motion for Reargument Denied February 24, 1984

110

*John J. Easton, Jr.*, Attorney General, *Susan R. Harritt*, Assistant Attorney General, and *Terry Robertson*, Law Clerk (On the Brief), Montpelier, for Plaintiff-Appellee.

*Andrew B. Crane*, Defender General, and *William A. Nelson*, Appellate Defender, Montpelier, for Defendant-Appellant.

**Peck, J.** This is an appeal by defendant from a conviction, after a jury trial in the district court, on two counts of breaking and entering in the daytime. We affirm.

Six issues were presented for review. Two of these issues were not raised below; accordingly, they are not preserved for review. *State* v. *Billado*, 141 Vt. 175, 182, 446 A.2d 778, 782 (1982). Of the four claims remaining, two were clearly raised below and are properly before this Court: (1) the trial court erred in allowing the State to impeach the defendant by the use of prior convictions; (2) the defendant was prejudiced by a statement by the prosecutor that he had "lost the race to the prosecutor's office" for plea bargaining purposes. There is some question as to whether the last two claims were preserved for review; we will examine them in the light of that question. They are the following: first, the court erred in refusing to grant a mistrial when the prosecutor improperly asked a defense witness a question prejudicial to defendant; second, the court erred in refusing to grant immunity to a

prospective witness so that he might provide exculpatory testimony on defendant's behalf.

On March 25, 1982, defendant was charged with two counts of breaking and entering in the daytime, in violation of 13 V.S.A. § 1202. The charges arose out of two separate incidents that occurred on May 15 and November 7, 1980, in the Burlington area. The targets of both burglaries were private residences.

In the May 15th burglary, the victim's house had been entered through a kitchen window sometime during the afternoon while she was out shopping. The house had been ransacked and her stereo stolen. In the November 7th burglary, entry was gained by forcing open a set of sliding glass doors. This time the intruders took, among other things, a number of handguns, a rifle, a shotgun, and camera equipment. Investigation of these incidents by the police had been fruitless until one of defendant's accomplices came to the police with information regarding the crimes.

Testimony by co-defendants Walter LeClaire and Edward Ross played a key role in the State's case. Through their testimony and testimony of admissions made by defendant, and other evidence of a more circumstantial nature, the jury was justified in concluding that he participated in both offenses.

## I.

Defendant has a record of numerous convictions for theft-related offenses, which include petty larceny, on September 3, 1980; aiding in the concealment of stolen property, on September 26, 1980; receiving stolen property, on March 16, 1981; and breaking and entering in the daytime, on March 18, 1981. The State argued that all four were crimes of moral turpitude under 12 V.S.A. § 1608, and proposed to use them to impeach the defendant at trial. At the pretrial conference on defendant's motion in limine to exclude the convictions, defendant conceded that the petty larceny and breaking and entering were crimes of moral turpitude; nevertheless, he argued for their exclusion. The court admitted all except the conviction for aiding in the concealment of stolen property.

We note at the outset that this case came to trial prior to the adoption of the Vermont Rules of Evidence (V.R.E.) on April

1, 1983. It is therefore governed by 12 V.S.A. § 1608, which allows the use of convictions for crimes involving moral turpitude which occurred within 15 years to impeach a witness.

Although the crux of defendant's claim here is that the trial court gave inadequate consideration to the prejudicial effect of his prior convictions in ruling on their admissibility, he argues also that his conviction for receiving stolen property did not involve moral turpitude. We address the latter argument first.

In *State* v. *LaPlante,* 141 Vt. 405, 410, 449 A.2d 955, 957 (1982), we held that receipt of stolen property may involve moral turpitude under certain circumstances. In that case, we held that the element of wrongful intent to take and keep the property of another was sufficient to make the crime of larceny "inherently base." *Id.* The circumstances of the instant case are sufficient to show the same wrongful intent concerning stolen property, although the lesser offense of its receipt was charged. Accordingly, we find no abuse of discretion in the trial court's ruling that, in the case at bar, the offense involved moral turpitude. Accord *People* v. *White,* 86 Ill. App. 3d 19, 23–24, 407 N.E.2d 572, 577 (1980); *Commonwealth* v. *Pilosky,* 239 Pa. Super. 233, 240, 362 A.2d 253, 257 (1976).

A finding of moral turpitude is only the first hurdle to overcome in determining the admissibility of prior convictions for impeachment purposes. The court must then weigh the probative value of the evidence against its prejudicial effect. The analysis is similar to the balancing test of V.R.E. 403. However, this case, having antedated 403, is governed by our holdings in *State* v. *Gardner,* 139 Vt. 456, 433 A.2d 249 (1981). In that case we held that impeachment by the use of prior convictions under 12 V.S.A. § 1608 is not a matter of right, but is subject to the trial court's discretion. *Id.* at 458, 433 A.2d at 250. As *Gardner* points out, there is a significant danger that when evidence of prior convictions is admitted, a jury will infer a propensity to commit the crime charged rather than weigh it in determining the defendant's veracity. *Id.* Such a result should be avoided. *State* v. *Bushey,* 142 Vt. 507, 510, 457 A.2d 279, 281 (1983). To reduce that risk, *Gardner* set forth a list of factors for consideration by the trial courts in evaluating the quality and necessity of the evidence relating to prior convictions. *Gardner, supra,* at 460–61, 433

A.2d at 251–52. Failure to give them adequate consideration may constitute an abuse of discretion and result in reversal. See *State* v. *Jarrett*, 143 Vt. 191, 465 A.2d 238 (1983).

It is not necessary to repeat here the full litany of factors set forth in *Gardner* for consideration by the trial courts in ruling on motions to suppress prior convictions. In any event, by the express language of the opinion in that case, even that list is not necessarily exclusive: "This discussion is by no means exhaustive. Many other facts may well be important in different situations." *Gardner, supra,* at 461, 433 A.2d at 252.

Under the provisions of 12 V.S.A. § 1608, the only preliminary "findings" required of the trial court are whether the earlier crimes occurred within fifteen years and whether they were crimes "involving moral turpitude." It is clear that these requirements were satisfied in the instant case. Beyond these essentials, however, and subject only to the trial court's discretion to be exercised in accordance with this Court's decision in *Gardner, all* prior convictions are admissible under § 1608.

■ It has been suggested that we should add a requirement that the lower court must make findings of fact to aid our review of its discretionary action. *State* v. *Jarrett, supra,* at 195, 465 A.2d at 241 (Justice Underwood concurring). To do so, however, would reverse one of the clear holdings in *Jarrett,* that we can *assume* compliance with the *Gardner* criteria unless the contrary is clear from the record. *State* v. *Jarrett, supra,* at 193, 465 A.2d at 240. We decline to adopt the additional requirement.

In this case, arguments of both counsel and the ruling of the court were preserved in the transcript of the pretrial conference on defendant's motion to exclude the convictions. Review of that record satisfies us that the court considered and applied the *Gardner* factors as required by *Jarrett, supra,* and in doing so did not abuse its discretion.

Defendant maintained that the length of his record, and the similarity of the offenses to the crimes charged, posed a substantial risk of prejudice if disclosed to the jury. These are among the factors mandated for consideration in *Gardner.* The court was fully aware of the dilemma defendant faced in being compelled to reveal his record should he testify. However, it found that circumstances surrounding his participation in

petty larceny, breaking and entering in the daytime and receiving stolen property, and the fact that they all occurred so closely in time to the crime charged, indicated a strong disposition for dishonesty. The court concluded that their bearing on veracity, when joined with the fact that they constituted the only substantial means of impeachment available to the State, outweighed the risk of prejudice to the defendant. We think this conclusion is amply supported.

This Court will not interfere with discretionary rulings that have a reasonable basis. *State* v. *Savo,* 141 Vt. 203, 208, 446 A.2d 786, 789 (1982), even if another court might have reached a different conclusion. In order to demonstrate an abuse of discretion, the burden is on the party claiming error to show that it has been withheld altogether, or exercised for some clearly untenable reason. *Id.* This has always been, and it remains, the standard, however difficult it may be in any discretionary action. We are satisfied that the court had a reasonable basis for its ruling; no abuse of discretion appears.

## II.

Walter LeClaire, who had pled guilty to one of the burglaries for which defendant was charged, agreed to testify against defendant in return for a plea agreement relating to the second burglary. This arrangement was brought out by both sides at trial. During the State's closing argument, however, the prosecutor made the following statement:

> What has happened in this case and what you have seen is a race to the prosecutor's office. When Eddy Ross gave his statement, Wally LeClaire looked it over and he said, "I'm not willing to take a chance. I did it. I'm going to plead. I'm going to make myself a deal." He came in and that's what he did. He beat Eddy Foy to the prosecutor's office.

Counsel for defendant objected. The court sustained the objection and immediately issued a cautionary statement, instructing the jury to disregard the remarks and not infer from it that defendant was under any duty to go to the prosecutor's office. Shortly thereafter, the prosecutor apologized for the remark. The jury was later reminded of the earlier cautionary instruction during the general charge at the close of the case.

██ The burden is on the defendant to prove prejudice resulting from a prosecutor's remarks to the jury. *State* v. *Lapham,* 135 Vt. 393, 407, 377 A.2d 249, 257 (1977). The possibility of prejudice here is apparent on the face of the statement. In addition to suggesting that defendant had a duty to go to the prosecutor's office, the statement implied that he had hoped to make a deal, but had been refused. Because of its inflammatory nature and potential for prejudice, the statement was improper. *State* v. *Blakeney,* 137 Vt. 495, 504, 408 A.2d 636, 641–42 (1979).

In *State* v. *Ross,* 130 Vt. 235, 290 A.2d 38 (1972), the prosecutor remarked that defendant, on trial for driving under the influence of intoxicating liquor, was an alcoholic, and that the jury had an opportunity to give him a means for badly needed treatment. There was no basis in the evidence for such a statement, and because the trial court took no steps to correct the error, defendant's conviction was reversed. *Id.* at 238, 290 A.2d at 40. In *State* v. *Lapham, supra,* the conviction was reversed, in part because of the prosecutor's statements that defendant had concocted an insanity defense to escape justice. In neither case were immediate steps taken by the court to remedy the improper influence of those statements. The general instruction given in both cases, that the arguments of counsel were not to be considered as evidence, was held to be insufficient. *Id.* at 408, 377 A.2d at 258; *State* v. *Ross, supra,* at 238, 290 A.2d at 40; see also *Woodmansee* v. *Stoneman,* 133 Vt. 449, 458, 344 A.2d 26, 31 (1975). The instruction rejected in *Ross* and *Lapham,* however, has been held to be adequate on different facts. *State* v. *King,* 131 Vt. 200, 209, 303 A.2d 156, 162 (1973) ; *State* v. *Jackson,* 127 Vt. 237, 239, 246 A.2d 829, 830 (1968). The circumstances of each case must govern its merits. The final inquiry is whether the defendant's rights were so injuriously affected as to deprive him of a fair trial. See *Donnelly* v. *DeChristoforo,* 416 U.S. 637, 643 (1974).

██ In the instant case, upon defendant's immediate objection to the remark, the trial court struck promptly and forcefully at the essence of the error, and repeated the cautionary admonition later during its general charge. "[A] strongly worded and prompt admonition is preferred, and in appropriate cases, will cure the need for a mistrial." *State* v.

*Normandy,* 143 Vt. 383, 386, 465 A.2d 1358, 1360 (1983). This is such a case. In the absence of an affirmative showing to the contrary, we assume that the instruction was not ignored by the jury and that the prosecutor's statement was disregarded. *State v. Covell,* 142 Vt. 197, 201–02, 453 A.2d 1118, 1120 (1982) (citing *State* v. *Fisher,* 134 Vt. 339, 341, 360 A.2d 102, 104 (1976)) ; *State* v. *Bishop,* 128 Vt. 221, 229–30, 260 A.2d 393, 399 (1969).

### III.

As noted above, Walter LeClaire had agreed to testify against defendant. During the course of the trial, an incident was alleged to have occurred in the hallway of the courtroom in which one of defendant's brothers openly referred to LeClaire as a "songbird." Raymond Foy, the defendant's brother, was asked on cross-examination if he had made that statement. Defendant objected and moved for a mistrial. A conference on the matter was held in chambers at the conclusion of which the State decided not to pursue the question further and the parties agreed to "forget it." However, defendant argues here that the motion was not dropped and, therefore, the issue was preserved for appeal.

Although the motion was not formally withdrawn, nothing in the record suggests that defendant pursued his motion for a mistrial to a ruling. The issue was clearly abandoned. Trial courts must be given "a fair opportunity to consider, evaluate and rule upon such questions." *State* v. *Kennison,* 135 Vt. 238, 240, 373 A.2d 556, 558 (1977). A motion abandoned below cannot be resurrected on appeal.

In any event, whatever prejudice the defendant may have suffered by the State's confrontation with his witness was cured by a cautionary instruction to the jury by the court, which stated in part:

> It therefore appears that the statement, if made at all, has no possible relevance to these cases. I instruct you, the jury, during your deliberations, you are not to consider the alleged statement in any way in deciding these cases; and since the alleged statement has not been shown to be the statement of any witness in this case, you must not consider it with respect to the credibility of any witness

that you heard. In other words, I want you to entirely disregard [the question and any response made to it by the witness]. . . .

## IV.

The final claim also raises doubt as to whether it was properly preserved for review.

 Defendant sought to have one of his prospective witnesses granted use immunity by the State. 12 V.S.A. § 1664. He maintained that it was necessary because, in order to exculpate defendant, the witness would have to incriminate himself. The State declined to grant the immunity, feeling that to do so would jeopardize criminal proceedings pending against the witness. The court held it was without authority to compel the State to grant immunity and denied the motion, but nevertheless left it open to defendant to come forward with authority which might convince it otherwise; thus, the court's ruling was never finalized, but remained open pending the receipt of whatever authorities defendant might wish to submit. None were forthcoming, and the prospective witness did not testify. From all that appears on the record, this matter was also abandoned by counsel. In matters relating to examination of witnesses, we have stated that "it [is] reasonable to require some diligence on the part of counsel in pressing an evidentiary point that is the subject of an ambiguous exchange . . . ." *State* v. *Kasper,* 137 Vt. 184, 199–200, 404 A.2d 85, 94 (1979). Similarly, "[w]here counsel abandons a question or line of questioning before the court has ruled that he must do so, there is no basis for a claim of error." *Id.* at 206, 404 A.2d at 97. We find a comparable logic applicable here. Insofar as defendant did not avail himself of the opportunity to submit authorities in support of his position, the matter was waived for purposes of this appeal.

*Affirmed.*

Underwood, J., dissenting. 12 V.S.A. § 1608 permits the State to use evidence of defendant's previous convictions of crimes involving moral turpitude to impeach the credibility of the defendant. Although defendant conceded at a suppression hearing that two of the four convictions offered by the State in-

volved crimes of moral turpitude, he moved to exclude all four of the convictions. The district court denied the motion and admitted three of the convictions.

12 V.S.A. § 1608, however, no longer permits the State, as a matter of right, to introduce evidence of prior convictions, even if they do involve crimes of moral turpitude. We held in *State* v. *Gardner,* 139 Vt. 456, 433 A.2d 249 (1981), that cross-examination of the defendant concerning his prior convictions is subject to the discretion of the trial court. In exercising its discretion the court should consider the nature of the proceeding for "the greatest danger of prejudice exists when the witness to be impeached is the defendant in a criminal trial." *Id.* at 460, 433 A.2d at 251. The nature of the crimes to be admitted for impeachment purposes is most important. "An especially severe possibility of prejudice exists when the crime to be introduced for impeachment is similar to or the same as the crime for which the defendant is accused." *Id.* at 460–61, 433 A.2d at 251. If the defendant has no means of defense other than his or her own testimony, and the fear of impeachment is likely to prevent him or her from testifying, then the court "should more readily exclude evidence of prior convictions when there are other means of impeachment available." *Id.* at 461, 433 A.2d at 252.

The length of a defendant's criminal record can be highly prejudicial. *Id.* at 461, 433 A.2d at 251–52. The defendant here had a record of four prior convictions, and the court admitted three of them.

Defendant was charged with two counts of breaking and entering in the daytime, and the three convictions which the court permitted the State to use to impeach his credibility—namely petit larceny, breaking and entering in the daytime and receiving stolen property—were so similar to the offense for which he was being tried that their introduction did not serve to impeach the veracity of the defendant but could only implant in the jurors' minds that if the defendant had previously committed these crimes he more than likely committed the crimes for which he was now being charged.

Assuming that the three convictions admitted all involved crimes of moral turpitude, the probative value of such evidence strictly for impeachment purposes is scant. The State had "other means of impeachment available." The State had a wit-

ness who could testify that the defendant actually admitted involvement in one of the burglaries. Although the admission was admissible as substantive evidence of guilt, it was a prior inconsistent statement and therefore could be used to impeach the defendant's testimony at trial, when he claimed noninvolvement. *Commonwealth* v. *Roots,* 482 Pa. 33, 41–42, 393 A.2d 364, 368 (1978). Evidence of the prior convictions served only to attack the character of the defendant who had not previously put his character in issue. We have held that "evidence of prior convictions is not admissible for the purpose of showing that a defendant in a criminal trial is 'the type of person who would do such a thing.'" *State* v. *Bushey,* 142 Vt. 507, 510, 457 A.2d 279, 281 (1983) (quoting *State* v. *Moran,* 141 Vt. 10, 19–20, 444 A.2d 879, 884 (1982)). "To project the issue of the accused's former conviction(s) into the trial for a subsequent offense, before verdict, practically deprives the respondent of the legal presumption of innocence, inevitably prejudices the jury against him, and takes from him his constitutional right to be convicted only by the judgment of his peers and due process of law." *State* v. *Cameron,* 126 Vt. 244, 250, 227 A.2d 276, 280 (1967).

When a trial court is confronted with a request for admissibility of evidence of prior convictions to impeach a defendant in a criminal case, it should bear in mind that "[e]xclusion is the rule, and admission the exception." *State* v. *Batchelor,* 135 Vt. 366, 369, 376 A.2d 737, 740 (1977).

The court's failure to give adequate consideration to the close similarity of the prior convictions with the crimes for which the defendant was on trial, or to weigh adequately the fact that the defendant was the only witness who could establish his innocence, and to consider seriously the effect of the length of the defendant's criminal record, constituted an abuse of discretion. In my view it was reversible error. *State* v. *Jarrett,* 143 Vt. 191, 465 A.2d 238 (1983).

Since the court made no written or oral findings on defendant's motion in limine to exclude the prior convictions, as I suggested in my concurring opinion in *Jarrett,* I do not see how the majority can say: "Review of that record satisfies us that the court considered and applied the *Gardner* factors as required by *Jarrett, supra,* and in doing so did not abuse its discretion."

Because of the court's abuse of discretion and the resultant highly prejudicial impact of the prior convictions, I would reverse and remand for a new trial. I am authorized to say Justice Gibson joins in this dissent.