## State of Vermont v. Richard Potter

[529 A.2d 163]

No. 84-485

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes,**[1] **JJ.**

Opinion Filed April 10, 1987

---

[1] Justice Hayes sat during the hearing but did not participate in the decision.

*William S. Bos*, Windsor County State's Attorney, and *M. Patricia Zimmerman*, Law Clerk (On the Brief), White River Junction, for Plaintiff-Appellee.

*Martin and Paolini*, Barre, for Defendant-Appellant.

**Peck, J.** Defendant appeals his conviction, following jury trial, on charges of first degree arson and possession of stolen property. We affirm.

Defendant raises several issues for our consideration. First, he contends that the trial court erred in refusing to declare a mistrial after a witness referred to the possibility that he had been recently incarcerated. Second, defendant argues that the court violated his constitutional right to present evidence in his defense when it denied a motion to reopen his case for the purpose of admitting an anonymous, exculpatory note into evidence. Third, he assigns error to the trial court's denial of his motion to suppress evidence seized from a storage shed located on his mother's property, and he asserts both a lack of probable cause for issuing the search warrant and a failure to include the shed within its scope. Fourth, defendant argues that the lower court erred in refusing to order acquittal or a mistrial after no stenographic record was made of the jury's verdict. Finally, defendant complains of the trial court's denial of two motions for a new trial, one following the receipt of a second exculpatory letter and the other following a purported confession made by a person incarcerated with defendant.

On the morning of October 11, 1983, fire destroyed the residence of David and Mary Chestnut. The Chestnuts' daughter, Cassandra Potter, testified at trial that she and her husband, defendant Richard Potter, who lived nearby in a mobile home,[2] arrived at her parents' home at approximately 9:15 that morning in order to wash some clothing. The Chestnuts were not at home, and the Potters left the house within five or ten minutes, relocking the door behind them. Mrs. Potter testified that she noted nothing unusual about the house except the fact that the woodstove was fully loaded with the damper open. By 9:45, a passerby observed smoke coming from the Chestnuts' house and reported the fire, but firefighters arrived too late to save the rapidly burning structure. Subsequent investigation revealed that a liquid incendiary had been used on the floor of the house and that the fire had not originated with the woodstove.

Mr. Chestnut testified that he owned an extensive but uninsured stamp collection, valued at approximately $200,000, and that it had been stored in the house. Although some evidence of burned stamps was found after the fire, the metal binders from the stamp albums could not be located. Testimony indicated that defendant knew where the collection had been stored as well as its value.

Before the fire occurred, the Potters had been discussing plans to leave Vermont, but instead they moved into the home of defendant's mother. Subsequent to the destruction of the Chestnut property, a warrant authorizing a search of defendant's mother's residence was obtained, and the shed behind the house was included in the search. Inside the shed, the stamp collection was found in two duffel bags, one with defendant's name stenciled on it. Defendant's mother testified that nobody other than defendant and his wife had a key to the shed or used it in any way.

After the defendant had rested his case at trial, an anonymous note appeared under the windshield wiper of a local police vehicle. The note, written in a disguised hand, included the claim that the writer had been paid to set the fires and to "set up the Potters." The court denied defendant's motion to reopen his case for the purpose of introducing this note into evidence. After the jury returned its verdict, the court received an anonymous letter ac-

---

[2] The mobile home was also destroyed by fire on the same morning. No criminal charges were filed as a result of this second fire.

companied by certain documents that appeared to be from the Chestnuts' house. This letter contained further assertions of defendant's innocence, but the court denied his subsequent motion for a new trial. Finally, while the appeal was pending, an inmate incarcerated with defendant professed guilt for the arson incidents. The investigating officer interviewed the inmate and elicited an account of the crimes that was inconsistent with the known facts. At the hearing on defendant's subsequent motion for a new trial, the inmate claimed his privilege against self-incrimination, and the court denied the motion.

## I.

We first consider defendant's claim that the trial court's denial of his motion for a mistrial was reversible error. The motion was made after a witness referred indirectly to the fact that defendant may have been incarcerated at some time immediately prior to the incident in question. During preliminary direct examination by the prosecution, Mrs. Chestnut was asked whether defendant had been living nearby during the ten days before the fire. She replied: "I don't know whether he was in jail then or at the house at that time." After approaching the bench, counsel for defendant asked the court to strike the response and moved for a mistrial. The court agreed to have the answer stricken but denied the motion, reasoning that the response was not anticipated by the State and that the problem could be cured with a jury instruction. The court then addressed the jury, stating:

> [T]he Court heard in the last response by Mrs. Chestnut a reference to the Defendant possibly may have been in jail in October, 1983. That is at this time stricken from the record, and you will disregard that in all of your deliberations. It's not evidence in this case. It's removed from the case at this time by order of the Court.

Because the disposition of a motion for mistrial is discretionary, a claim of error can be supported only with a showing that the court's discretion was either totally withheld or exercised on grounds clearly untenable or unreasonable. *State* v. *Chambers*, 144 Vt. 377, 381, 477 A.2d 974, 977 (1984). Reversal is appropriate only where prejudice is shown by the moving party, and the exis-

tence of prejudice is to be determined on the facts of each case in the context of the entire proceeding. *Id.*

■ Here, defendant has failed to demonstrate an abuse of discretion. We have held that a prompt, strongly worded admonition to the jury can eliminate the need for a mistrial in certain cases. *State* v. *Foy*, 144 Vt. 109, 116, 475 A.2d 219, 224 (1984); see also *State* v. *Hamlin*, 146 Vt. 97, 104-05, 449 A.2d 45, 51 (1985). Here, such an admonition was given; "the trial court struck promptly and forceably at the essence of the error . . . ." *Foy* at 116, 475 A.2d at 224. Moreover, in its final instructions, the court again cautioned the jury to disregard all remarks stricken from the record. Defendant has not made an affirmative showing to the contrary; accordingly, we assume that the instructions were not ignored by the jury, and that the witness' remark was disregarded. See *Foy* at 117, 475 A.2d at 224. The grounds supporting the trial court's denial of the mistrial motion were tenable and reasonable, and defendant has failed to demonstrate an abuse of discretion or that he was prejudiced.

## II.

The second claim of error relates to the anonymous note that appeared after the close of evidence. Defendant argues that the trial court's denial of his motion to reopen his case for the purpose of admitting the note into evidence violated his right, guaranteed by Chapter I, Article 10 of the Vermont Constitution, to call for evidence in his defense. We disagree.

■ A trial court's ruling on a motion to reopen is discretionary. *State* v. *Fitzgerald*, 141 Vt. 369, 371, 449 A.2d 930, 931 (1982). Refusal to reopen a case is not an abuse of discretion where the proffered evidence would be inadmissible, *People* v. *Mason*, 183 Cal. App. 2d 168, 173, 6 Cal. Rptr. 649, 652 (1960), and the admission of evidence is a highly discretionary matter. *State* v. *Picknell*, 142 Vt. 215, 230, 454 A.2d 711, 718 (1982). While the trial court here made no formal ruling as to admissibility, it expressed concern regarding the relevance of the note, its lack of authentication, and potential problems with the right to confrontation. The court also acknowledged the difficulties that could arise if anonymous, exculpatory notes were admissible in criminal proceedings. Finally, the court noted the availability of procedures for seeking a new trial. Thus, defendant has failed to

demonstrate that the grounds for denial of the motion to reopen were either untenable or unreasonable.

■ Defendant presses his appeal on constitutional grounds, however, citing Chapter I, Article 10 of the Vermont Constitution, which provides in part: "That in all prosecutions for criminal offenses, a person hath a right . . . to call for evidence in his favor . . . ." This argument was not made in the court below, and we will consider it on appeal only if it assigns "plain error," i.e., error of such magnitude as to "strike at the very heart of a defendant's constitutional rights or adversely affect the fair administration of justice." *State* v. *Messier*, 146 Vt. 145, 158, 499 A.2d 32, 42 (1985) (citations omitted). The mere assertion of a violation of constitutional rights, standing alone, does not establish plain error, per se. *State* v. *Gilman*, 145 Vt. 84, 88, 483 A.2d 598, 600 (1984). In the case before us, the court's denial of the motion has not been shown to be untenable or unreasonable; no plain error appears.[3] Moreover, although we need not consider defendant's argument further, Article 10 does not confer upon the criminal defendant an independent right to introduce evidence at trial; the "evidence in his favor" must conform to the law of evidence in order to be admissible. *State* v. *Johnson*, 143 Vt. 355, 359, 465 A.2d 1366, 1368 (1983). Thus, the trial court's denial of the motion to reopen was a proper exercise of its discretion.

### III.

Defendant next challenges the lower court's denial of his motion to suppress evidence seized from a shed located behind his mother's house.[4] In support of his claim of error, defendant argues that the search warrant was not supported by probable cause and that, even if the warrant were valid, the shed was not within its scope. We disagree.

---

[3] We agree with the State that, even if V.R.E. 804(b)(3) were applied to the facts here, the anonymous note would be inadmissible. Because it was anonymous, the note did not tend to subject the declarant to criminal liability.

[4] Although defendant invokes both state and federal constitutions, he does not argue that the Vermont Constitution requires either a higher degree of probability for issuance of a search warrant or greater particularity in its descriptive terms than does the Fourth Amendment. Also, because we find that the warrant was supported by probable cause, we do not reach defendant's arguments regarding the so-called "good faith" exception to the exclusionary rule. Therefore, no separate analysis under the state constitution is appropriate.

■ Where the existence of probable cause for issuance of a search warrant is challenged, this Court must determine whether there is substantial evidence in the record supporting the magistrate's decision. *State* v. *Dorn*, 145 Vt. 606, 617, 496 A.2d 451, 457 (1985). The issuing magistrate's conclusion that probable cause exists must be treated with great deference on review. *State* v. *Maguire*, 146 Vt. 49, 53, 498 A.2d 1028, 1030 (1985). We must decide only if the magistrate has made " 'a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *Id.* at 53, 498 A.2d at 1031 (quoting *Illinois* v. *Gates*, 462 U.S. 213, 238-39 (1983)).

■ Here, the issuing magistrate relied upon an affidavit by the investigating officer containing a significant amount of information not relied upon at trial, including the destruction by fire of the Potters' mobile home. The affiant noted the proximity in time and place of the two fires, the relationship between the Chestnuts and defendant, and the fact that both fires had involved a liquid incendiary. The affidavit also informed the magistrate that defendant had been observed at the Chestnut residence minutes before the fire and that the house had been locked at all other times. The officer noted further that no trace of a $200,000 stamp collection could be located in the remains of the Chestnut residence, that defendant knew about the collection, and that defendant had told an acquaintance that he would soon be acquiring an item worth $200,000. Defendant had informed his probation officer that he would be moving to a different state in the near future. Defendant had also told the affiant that certain firearms and furniture were burned in his mobile home, but no evidence of such items could be found. The affiant observed that Mrs. Chestnut had seen defendant moving items from his mobile home to his mother's house before the fires, that a padlock had recently appeared on a shed located behind this house, and that defendant and his wife had moved in with his mother after the fires. He also noted that defendant had an extensive criminal record, much of which involved property crimes. We find that these facts, when considered together, indicated a fair probability that relevant evidence would be found in defendant's mother's house or in the shed. The evidence supporting the magistrate's determi-

nation of probable cause was substantial, and the trial court was correct in affirming his decision.

■ Defendant also argues that suppression was required because the search warrant did not include the shed in its description of the place to be searched. Both state and federal constitutions require that a warrant describe the place to be searched with particularity. U.S. Const. amend. IV; Vt. Const. art. 11. Here, the search warrant authorized a search of "the Irma Potter residence, so-called, a two story wooden-framed residence, green in color, located on 38 Main Street in the Town of Quechee, being the only residence next to the grist mill . . . ." Thus, the question we must decide is whether judicial authorization to search this residence also extended to the shed, which was located approximately fifteen feet from the house. We hold that it did.

In denying the motion to suppress, the trial court relied upon our decision in *State* v. *Stewart*, 129 Vt. 175, 274 A.2d 500 (1971), where we stated that a tree would be within the scope of a warrant authorizing the search of a residence if the tree were within the curtilage. *Id.* at 179, 274 A.2d at 502. Defendant's argument here is based on our definition of "curtilage" in *Stewart*, which stated that the concept includes " 'the open space situated within a common enclosure belonging to a dwelling house.' " *Id.* at 178, 274 A.2d at 502 (quoting Ballentine's Law Dictionary 300 (3d ed. 1969)). Defendant observes that the locked shed was not an "open space," and he contends that it provided him with a reasonable expectation of privacy. This argument is not helpful, however, simply because the curtilage of a residence gives rise to a reasonable expectation of privacy. *Oliver* v. *United States*, 466 U.S. 170, 180 (1984). The issue here is not whether a warrant was required but whether the warrant at hand extended to the shed.

■ Generally, the curtilage concept includes those outbuildings " 'used for domestic purposes in the conduct of family affairs.' " *State* v. *Vicars*, 207 Neb. 325, 330, 299 N.W.2d 421, 425 (1980) (quoting *State* v. *Kender*, 60 Hawaii 301, 304, 588 P.2d 447, 449 (1978)). Here, because the shed was an outbuilding used for the purpose of storing family property, among other things, it was part of the curtilage of the house. A judicial warrant authorizing the search of a particular residence extends by implication to areas within the curtilage of that residence. *Landers* v. *State*, 250 Ga. 808, 809, 301 S.E.2d 633, 634 (1983); see also *Stewart*, 129 Vt. at 179, 274 A.2d at 502. Therefore, we hold that the shed here was

within the scope of the warrant. This holding is in accord with the weight of authority from other jurisdictions.[5] See *United States v. Moore*, 743 F.2d 254, 256 (5th Cir. 1984) (under state law, garage forty feet from house held within scope of warrant describing residence only); *Vicars*, 207 Neb. at 330, 299 N.W.2d at 424-26 (calf shed held within scope of search warrant describing residence only); *Barton v. State*, 161 Ga. App. 591, 592, 288 S.E.2d 914, 915 (1982) (shed twenty feet behind house held within scope of warrant authorizing search of "premises"). The trial court's denial of the motion to suppress was not erroneous.

## IV.

The fourth error assigned by defendant concerns an inadvertent failure to record the jury's verdict in the transcript. Defendant argues that the record was fatally flawed as a result and that the trial court's denial of his motion for acquittal or a mistrial was reversible error. We disagree.

Defendant's motion for acquittal was based on V.R.Cr.P. 29(c), which provides: "If the jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made . . . . If no verdict is returned the court may enter judgment of acquittal." Defendant argued below that, in effect, the jury had been discharged without having returned a verdict because their verdict was not recorded. Even if this argument were valid, disposition of the motion would be discretionary. However, we agree with the lower court that Rule 29(c) is inapplicable on this basis because the jury did return a verdict, as noted in the docket and disposition reports by the court. Defendant cites no evidentiary ground as an alternative basis for his motion under Rule 29(c), and the court's refusal to enter a judgment of acquittal was proper.

■ As we have already observed, moreover, the disposition of a motion for a mistrial is discretionary. *Chambers*, 144 Vt. at 381, 477 A.2d at 977. Here, the lower court acknowledged the substantial nature of defendant's right to a jury verdict and his corollary rights to a unanimous verdict and publication of the verdict in open court. The court noted that the jury had voiced its unanim-

---

[5] Notwithstanding this holding, we caution that the better and safest practice is to include expressly a description of the outbuildings and other structures located on the premises if they will, or may, be searched.

ity, that defendant had waived his right to a poll of the jurors, and that the verdict had been announced in open court in the presence of defendant and his counsel. The court also emphasized that the irregularity in the record would not impair defendant's ability to appeal his conviction. Thus, the record reveals that the trial court's discretion was exercised in a highly responsible manner, and no error appears. It is manifest from the record that the jury did return a verdict of guilty.

## V.

Defendant's final claim of error challenges the denial of a motion for a new trial, and his argument is framed as if a single motion had addressed the cumulative receipt of new evidence: the anonymous note received after the close of evidence, the anonymous letter received after the jury's verdict, and the purported confession that occurred during the pendency of this appeal. The record reveals, however, that each of these items of evidence was treated separately in the court below. The anonymous note was the subject of a motion for a mistrial, and we have already affirmed the denial of that motion. The letter and the confession were the subjects of two distinct motions for a new trial, and we find no error in the trial court's denial of these motions.

Disposition of a motion for a new trial is a matter within the discretion of the trial court, and its decision will not be reversed unless defendant shows that this discretion was either withheld or abused. *State* v. *Mecier*, 145 Vt. 173, 181, 488 A.2d 737, 743 (1984). Where newly discovered evidence is the basis for the motion, a stringent test is applied: (1) the evidence must be material and must have been discovered after the trial, (2) it must be truly new and not merely undiscovered because of lack of diligence, (3) it must be of such character to provide reasonable assurance that a different result will be reached upon retrial, and (4) it must not be merely cumulative or only of impeaching effect. *Id.*

Here, defendant's first motion for a new trial was based on the post-verdict receipt by the court of an anonymous, exculpatory letter accompanied by various documents apparently taken from the Chestnuts' residence. Like the note found earlier, the photocopied letter was executed in disguised handwriting, and its author claimed responsibility for the fire. After analyzing the letter

with the guidance of the factors listed above, the court found that it would not provide reasonable assurance of a different result, primarily because it raised problems of authentication and hearsay and would not be admissible on retrial. Thus, defendant has not demonstrated an abuse of discretion.

Defendant's second motion for a new trial followed a purported confession to the crime made by an individual incarcerated with defendant. This individual claimed that he had burned the two homes and had stolen the stamp collection in an attempt to "set up" defendant. He stated that he had been hired for this purpose by an unnamed person who felt that defendant had defrauded him in a drug transaction. He also alleged that he had written the anonymous letters and that he had decided to confess because he had not been paid the promised $10,000. The trial court held an evidentiary hearing, a procedure endorsed by this Court in *State v. Unwin*, 142 Vt. 562, 458 A.2d 1107 (1983), but the inmate invoked his privilege against self-incrimination. However, the transcript of an interview conducted by the officer who had investigated the two fires was introduced into evidence. The court noted repeated discrepancies between the established facts and the inmate's description of the incident in the interview, including the location and size of the stamp collection, the use of the incendiary, the relative locations of the Chestnuts' residence and the Potters' mobile home, the timing of the two fires, and the location of the shed. The court found that this individual's account of the crime was "entirely contrived." Because the purported confession did not raise the probability of a different result on retrial, and because it would have had only a cumulative evidentiary effect, the court denied the motion.[6] Again, defendant has failed to demonstrate an abuse of discretion, and the lower court's judgment is affirmed.

*Affirmed.*

---

[6] While we decline to address defendant's claim of cumulative error, we note that the trial court did consider the relationship among the three items of new evidence on its own initiative. After evaluating the purported confession and finding it to be "entirely contrived," the court observed that additional doubt was cast upon the letters. The court opined; *"falsus in uno, falsus in omnibus"* (false in one thing, false in everything).