# In re Louis Hamlin, III

[582 A.2d 129]

No. 88-593

Present: Allen, C.J., Peck and Gibson, JJ., and Springer, D.J. (Ret.), Specially Assigned

Opinion Filed August 17, 1990

*Gear and Davis, Inc.*, Burlington, and *Oreste V. Valsangiacomo*, Barre, for Petitioner-Appellant.

*Jeffrey L. Amestoy*, Attorney General, and *Susan R. Harritt*, Assistant Attorney General, Montpelier, for Respondent-Appellee.

**Peck, J.** Petitioner appeals from the superior court's denial of his petition for post-conviction relief. Petitioner argues that the court erred by declining to recognize statements made by J.S. at Northern Tier Youth Services as exculpatory and material evidence. Specifically, he claims that the State's nondisclosure of these statements violated his rights to due process and confrontation, as well as V.R.Cr.P. 16(b)(2), and Chapter I, Article 10 of the Vermont Constitution. We affirm.

## I.

On May 21, 1981, petitioner, age sixteen, and J.S., age fifteen, were arrested for the brutal attack seven days earlier on two young girls on their way home from school, while walking along a shortcut in the woods often used by local school children. One of the girls died as a result of the attack, and the other suffered serious injuries. Petitioner was tried for and convicted of first degree murder, 13 V.S.A. § 2301, and aggravated sexual assault, 13 V.S.A. §§ 3252 and 3253. He was sentenced to forty-five years to life for the murder, and fifteen to twenty-five years for the sexual assault. J.S. was classified as a juvenile under Vermont law at the time, and therefore not prosecuted as an adult.

The State sent J.S. to Northern Tier Youth Services in Blossburg, Pennsylvania for evaluation, treatment, and rehabilitation. In April, 1982, J.S. reported to counselors that he had perpetrated the crimes after receiving encouragement from petitioner. These statements came to defense counsel's attention inadvertently after the trial, while working on another case. The Northern Tier statements, according to petitioner, were consistent with J.S.'s deposition testimony that was read to the jury at trial. Petitioner asserts that the statements that J.S. made at Northern Tier exculpate petitioner and have a reasonable probability of changing the outcome of the trial. The following evidence from the trial is relevant to our analysis of whether the Northern Tier statements are exculpatory and material.

J.S. gave a lengthy statement to the police when he was first apprehended implicating petitioner as the actual killer. The trial was postponed from November 1981 to May 1982, so that the State could depose J.S. That deposition took place on January 7th, 8th and February 16th of 1982. After the deposition had been transcribed, J.S. read over his testimony and changed hundreds of answers—approximately 225—in the transcript. At trial, the jury heard the oral deposition testimony and the written alterations J.S. made to the deposition transcript.

Glaring contradictions mark J.S.'s deposition testimony. J.S. gave conflicting answers pertaining to the facts repeatedly. His oral answers most often characterized petitioner as the initia-

tor, leader and primary perpetrator of the crimes, while his written changes shifted the blame from petitioner onto himself as the party responsible for the brutal acts. Responses by J.S. addressed to his truthfulness also abound with inconsistencies. Relevant illustrations of the testimony appear below with the analysis of petitioner's claims.

As shown below, the trial court acted well within its discretion by concluding that the Northern Tier statements do not warrant post-conviction relief. The evidence supports the court's finding that the statements were at least cumulative, and at most more inculpatory than the deposition of J.S. read to the jury at trial.

## II.

In his motion for post-conviction relief and now on appeal, petitioner argues that under *Brady v. Maryland*, 373 U.S. 83 (1963), the Northern Tier statements were exculpatory and should have been disclosed to him before trial.

We do not reach the questions of whether the State committed the alleged procedural and constitutional violations in failing to produce the allegedly exculpatory statements. At oral argument, petitioner conceded that he would consider this question resolved if the Northern Tier records had not been received by the State until after trial. The Northern Tier records were date-stamped May 17, 1982. The State did not have the information in its possession, custody, or control until at least three days after trial which concluded on May 14, 1982. We therefore address petitioner's only remaining claim of error.

## III.

Petitioner asserts that even if the State obtained the Northern Tier records after trial, these statements still constitute grounds for a new trial. The trial court applied the new trial standard set forth in V.R.Cr.P. 33 when it evaluated petitioner's motion for post-conviction relief. On appeal, petitioner must show that the trial court abused its discretion in denying the motion. *State v. Smith*, 145 Vt. 121, 131, 485 A.2d 124, 130 (1984).

■ *Smith* sets forth the stringent five-part test that petitioner must satisfy in order to obtain a new trial based on newly discovered evidence.

> (1) [I]t must appear that the new evidence would probably change the result upon retrial; (2) the new evidence must have been discovered subsequent to trial; (3) the evidence could not have been discovered earlier by the exercise of due diligence; (4) the evidence is material; and (5) the evidence is not merely cumulative or impeaching.

*Id.* at 131, 485 A.2d at 130–31; see also *State v. Jewell*, 150 Vt. 281, 285, 552 A.2d 790, 792 (1988) (listing new trial criteria). Failure to meet any one of the five criteria results in the denial of a new trial. *Smith*, 145 Vt. at 131, 485 A.2d at 131.

The trial court determined after its in camera review that "the only new information coming from the Northern Tier interviews were J.S.'s statements that the defendant had encouraged and solicited the killings." It found that "the statements made by J.S. could not have benefitted the defendant at any stage of his trial. Quite to the contrary, . . . the Northern Tier records tended to reflect *unfavorably* on the defendant." (Emphasis in original.) The court described the content of the records, stating:

> It is indeed true that J.S. in his Northern Tier statements, confessed to the murder for which the defendant was convicted. It is also true that J.S.'s Northern Tier statements portray the defendant as an accomplice, and not a principal. . . . [T]hese prior statements are hardly revelatory, as prior deposition testimony of J.S., which was read to the jury at trial, said essentially the same thing. However, these statements were not merely cumulative, they were *more damaging* to the defendant than the deposed statements of J.S. which were introduced at trial.

(Emphasis in original.)

We find no support in the record for petitioner's assertion that the judge abused his discretion in concluding that J.S.'s Northern Tier statements were cumulative and not material. Our review of the deposition and Northern Tier statements

confirms the court's conclusions. Amidst all of the contradictions, the deposition read at trial contained ample evidence of the same details that J.S. delivered to the Northern Tier treatment team.

For example, J.S.'s deposition contains at least seven separate statements explaining that he made the decisions and acted all on his own, without petitioner's direction. J.S. said that he had the idea to kill the girls, and many times said that he wanted the girls dead so that he and petitioner would not get caught. Finally, J.S. vividly described how he committed the offenses in at least thirteen sections of the deposition, many at considerable length. This evidence could have easily exculpated petitioner if the jury had believed J.S. The Northern Tier statements are cumulative.

We reject petitioner's assertion that J.S. was more inclined to be truthful in a treatment setting. The Northern Tier records explain why J.S.'s statements in the context of treatment contain no additional persuasive value. Petitioner, however, has been unable to assess J.S.'s honesty in the context of this treatment setting because he has not been able to review the Northern Tier records. The Northern Tier statements do not exculpate petitioner any more than the deposition statements read at trial. The evidence supports the court's finding that the statements would not benefit petitioner.*

■ Where newly discovered evidence is merely cumulative, a new trial will not be granted. *State v. Jewell*, 150 Vt. at 285, 552 A.2d at 792; see *State v. Potter*, 148 Vt. 53, 64 n.6, 529 A.2d 163, 170 n.6 (1987) (although not ruling on whether evidence was cumulative, Court noted trial court's problem with witness's credibility: "*falsus in uno, falsus in omnibus*' (false in one thing, false in everything)"). We hold that J.S.'s Northern Tier statements are cumulative and thus do not justify the grant of a new trial. In the well-stated conclusion of the trial

---

* We note that this Court has reviewed this deposition before in a prior appeal by petitioner. *State v. Hamlin*, 146 Vt. 97, 106–07, 499 A.2d 45, 52 (1985). At that time, we observed that J.S.'s "prior statements and testimony are contradictory. . . . [N]obody knew what [J.S.] might say on the witness stand." *Id.* at 108, 499 A.2d at 53 (citations omitted).

court, "it is difficult at best to see how yet another, more incul-patory mutation of J.S.'s constantly evolving account of the killing could have assisted the defendant."

*Affirmed.*