STATE OF NEBRASKA, APPELLEE, V.
STEVEN C. VICARS, APPELLANT.

299 N.W.2d 421

Filed November 21, 1980.   No. 43223.

Joseph F. Chilen of Denney & Chilen for appellant.

Paul L. Douglas, Attorney General, and G. Roderick Anderson for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

HASTINGS, J.

The defendant, Steven C. Vicars, has appealed from the denial of a motion for new trial by the District Court for Jefferson County. The defendant was charged with violating Neb. Rev. Stat. § 28-319(1)(c) (Reissue 1979), i.e., first degree sexual assault where the actor is 19 years of age or older and the victim is less than 16 years of age, and the victim has been subjected to sexual penetration. After conviction by a jury, the court sentenced

the defendant to a period in the Nebraska Penal and Correctional Complex of not less than 5 nor more than 8 years at hard labor.

The defendant assigned the following as error: (1) The District Court erred in overruling a motion to suppress certain physical evidence obtained as a result of a search of defendant's calf shed, pursuant to a search warrant that described his residence; (2) The refusal to allow defense counsel to impeach the credibility of the complaining witness on cross-examination; (3) The permitting of the defendant's wife, over objection, to testify against him; (4) The receipt into evidence of two exhibits which had not been produced for defendant's inspection pursuant to a pretrial discovery order; (5) The refusal to instruct the jury on lesser-included offenses; and (6) The refusal to instruct the jury with a cautionary instruction. We affirm the judgment of the District Court.

At the time of the offense, the defendant was 31 years of age and the victim, H, was 15 years of age. The complaining witness testified that on the night of the occurrence she had been babysitting for the defendant's children while the defendant, his wife, and two friends went out for the evening. During the early morning hours, defendant drove H home. It was enroute to her home that, H stated, the defendant turned off the highway and drove down a gravel road and into a field, where the defendant stopped the car. H testified that the defendant then pulled her over to him, told her he needed somebody, fondled her pelvic region, and then subjected her to sexual penetration. She also testified that she was experiencing her menstrual period at the time of the assault. The defendant then drove her home in silence.

The defendant testified that he remembers very little about the happenings that night. He stated that he began drinking beer that afternoon about 3:30, and by dinner time he had consumed approximately 12 beers; he and one dinner guest consumed a quart of whiskey

during dinner; and the defendant had five or six beers at a tavern that evening and two more mixed drinks upon returning to the defendant's home at the end of the evening. The only things that the defendant could remember from the time he and H got into his car so he could take her home to the time they reached her home, were as follows: "Well I remember goin' down Highway 8. . . . And I remember stoppin' in front of her house. . . . And I remember comin' back home or I remember bein' back home." He later testified: "I remember talking to her a little bit in front of her place." The only other thing the defendant could recall was that he got sick and vomited once, but he couldn't remember if H was with him at the time.

The victim said nothing about the incident that night when she went home, or the next day. However, the third day she did confide in a friend, and in the early morning hours that same day she ran away to her natural father in Florida. Further relevant facts will be detailed in connection with the discussion on each assignment of error.

The first assignment of error is that the District Court erred in overruling a motion to suppress certain evidence seized after a search of the defendant's residence and outbuildings. The investigating officers were informed by the defendant's wife that when he returned from taking the babysitter home, she had noticed stains on the front of his blue jeans. The next day she also noticed red stains on his undershorts. Mrs. Vicars testified that she washed the shorts, but hid the blue jeans. A search warrant was issued to search the residence of the defendant for bloody clothing.

The defendant lived on a farmstead on which were seven permanent structures, including a house and several sheds. The defendant rented four of those structures, including the house and three sheds. The blue jeans were found in one of the sheds which was used at various times as a rabbit hutch, a calf shed for bucket feeding young calves, and as a garage. The police

officers conducting the search initially had been informed by the defendant's wife that the blue jeans were in the residence of the defendant. After searching the residence, the police officers again contacted the defendant's wife, and were told she had removed them from the house and placed them in a white plastic garbage bag in a rabbit hutch in the calf shed. The police officers then searched the calf shed and seized the blue jeans. The defendant moved to suppress the blue jeans, arguing that they were outside the scope of the search warrant, and that the warrant described the residence of the defendant but not the outbuildings.

There is no doubt that the Constitution of the United States, as well as the Constitution of Nebraska, protects against unreasonable searches and seizures. In the words of the U.S. Supreme Court: "[T]he question is whether the challenged search or seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it. That inquiry in turn requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect." *Rakas v. Illinois*, 439 U.S. 128, 140, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978). The interest protected was defined by *Katz v. United States*, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967), where the Supreme Court held that the capacity to claim the protection of the fourth amendment depends not upon a property right in the invaded place, but upon whether the person who claims the protection of the amendment has a legitimate expectation of privacy in the invaded place. 389 U.S. at 353. Therefore, the question we are faced with is whether the defendant had a legitimate expectation of privacy in the calf shed where the blue jeans were found.

The calf shed was one of four of the seven buildings on the premises which the defendant leased. The other three leased buildings were the house in which the defendant and his family lived, and two sheds used for

storage. The calf shed was located about 100 feet from the house, on the opposite side of a chain link fence which surrounded the yard. The shed was first used to raise rabbits, but was later used to house bucket calves. The defendant's wife referred to it as the garage.

"Fourth Amendment protection extends not only to one's home but also to one's 'curtilage.' Curtilage is usually defined as a small piece of land, not necessarily enclosed, around a dwelling house and generally includes buildings used for domestic purposes in the conduct of family affairs." *State v. Kender*, 60 Hawaii 301, 304, 588 P.2d 447, 449 (1978).

The calf shed was clearly used by the defendant's family in their farming operation in such a manner that there was certainly a reasonable expectation of privacy in the shed that comes within fourth amendment protection.

The connected question is whether the search of that shed was made pursuant to a valid search warrant. The defendant argues that the search warrant did not extend to the calf shed because the description therein is as follows: "A green single family dwelling described as: Original Town of Thompson, Lots 16 to 22, Fr. Lots 11-15, 29S 8C 1BAF 8 Blk 7 . . . ." The defendant contends that the search warrant describes the place to be searched as the house only, and does not include any of the outbuildings. The question of whether an outbuilding, which is in the curtilage of a dwelling house, may be searched under the same warrant as that building, even though it is not specifically described, was dealt with in the case of *Bellamy v. State*, 134 Ga. App. 340, 214 S.E.2d 383 (1975). The court stated: "'Curtilage' comes down from early English days. An out-building on the grounds is within the 'curtilage' and may be searched under such a warrant, though not described specifically." *Id.* at 340, 214 S.E.2d at 384.

This view is not new. For instance, in *Ford v. State*, 34 Okla. Crim. 184, 185, 245 P. 909, 910 (1926), it was stated: "Ordinarily, a search warrant covers the cur-

tilage and appurtenances of the place described." See, also, *Seals v. State,* 157 Tenn. 538, 545, 11 S.W.2d 879, 881 (1928), which also held: "It is our opinion that a search warrant directing that a search be made of a principal building, identified by street number, authorizes the search of an outhouse so clearly appurtenant to and a part of the same premises as the coal house here involved." Even back in 1865, it was stated: "It would destroy the utility of the proceeding, if, beside the building principally named, all other buildings and places of concealment upon the same premises, occupied in connection with it and by the same person, could not also be searched, and by virtue of the same warrant." *Meek v. Pierce and another,* 19 Wis. 318, 321 (1865).

We, therefore, hold that by finding that the defendant had a reasonable expectation of privacy in the calf shed in question, a valid search warrant would be required for the search and seizure of the blue jeans. We also hold that the search warrant included the calf shed as an outbuilding appurtenant to and within the curtilage of the dwelling house, and, therefore, it was within the scope of the warrant. The District Court did not err in overruling the motion to suppress the evidence seized in that search.

The second error assigned by the defendant is that the District Court refused to allow defense counsel to impeach the credibility of the complaining witness on cross-examination concerning prior inconsistent statements referring to previous sexual relations with the defendant and whether there was force involved in the assault. Since neither consent nor force was an element of the crime charged, the District Court correctly excluded evidence on those two issues. The defendant argues that he was prejudiced by being unable to impeach the credibility of the complaining witness, since her veracity was of the utmost importance. We have previously held that the reception of evidence collateral to any issue in the case intended to affect the credi-

bility of a witness falls within the discretion of the trial court, and, absent an abuse of discretion, it is not grounds for reversal. *State v. King*, 197 Neb. 729, 733, 250 N.W.2d 655, 658 (1977). After reviewing the evidence, we find that there was no abuse of discretion and that the defendant was not prejudiced because, in fact, sufficient evidence was admitted which reflected upon the truth and veracity of the complaining witness.

There was testimony by a girl friend of the complaining witness: "She told me she shouldn't have told me that 'cause it wasn't true and that it could get her in a lot of trouble if it came out." The wife of the defendant testified that the victim first denied the incident and then admitted the incident in the same afternoon. The victim herself testified on cross-examination that she had at first denied the incident, but then again stated that it did occur. The victim also testified that the reason she ran away from home was to cope with the situation she found herself in after the assault. However, other witnesses testified that the victim had given her reasons for running away as relating to her problems at home, specifically that she wasn't getting along with her stepfather. We are satisfied that there was sufficient evidence before the jury which would tend to impeach the credibility of the complaining witness.

The defendant's third assignment of error is that the trial court permitted the defendant's wife, over objection, to testify against him. The defendant argues that Neb. Rev. Stat. § 27-505 (Reissue 1979) established a privilege which may be waived only with the consent of both spouses. The defendant further argues that the exception in subsection (3) of that statute does not apply, since the crime with which he was charged was not rape, but sexual assault in the first degree. Subsection (3) states: "These privileges may not be claimed: (a) In any criminal case where the crime charged is rape . . . ." Defendant insists that sexual assault in the first degree is not embraced within the term "rape."

The defendant was charged with subjecting a girl less than 16 years of age to sexual penetration, himself being over 19 years of age. This constitutes what was formerly known as statutory rape.

"A primary rule of construction is that the intention of the Legislature is to be found in the ordinary meaning of the words of a statute in the connection in which they are used and in light of the mischief to be remedied. [Citation omitted.] When the intent of the Legislature is clear, it is the duty of the courts to construe it in accordance with such intent. A sensible construction will be placed upon it to effectuate the object of the legislation rather than a literal meaning that would have the effect of defeating the legislative intent. [Citations omitted.]" *PPG Industries Canada Ltd. v. Kreuscher*, 204 Neb. 220, 228, 281 N.W.2d 762, 768 (1979).

"Sexual assault in the first degree includes within the scope of its definition rape, forcible sodomy, and statutory rape, as well as other forms of sexual assault not heretofore defined by our statutes." *State v. Country*, 194 Neb. 570, 572-73, 234 N.W.2d 593, 595 (1975). The intent behind this common law privilege is that it fosters the harmony and sanctity of the marriage relationship. See *Trammel v. United States*, 445 U.S. 40, 100 S. Ct. 906, 63 L. Ed. 2d 186 (1980). Our statute defines exceptions where these privileges may not be claimed. A reading of those exceptions shows that they deal with situations in which the harmony and sanctity of the marriage relationship have been breached or probably have been breached. The crime committed by the defendant is the same whether it is termed first degree sexual assault or statutory rape, and has the same effect on the harmony and sanctity of the marriage relationship.

The crime with which the defendant was charged certainly comes within the ordinary meaning of "rape." It is clear that the Legislature intended to include the crime of rape in its ordinary meaning in the privilege statute. Therefore, the District Court was not in error

when it ruled that the defendant could not claim the husband-wife privilege.

The defendant's fourth assignment of error is that the District Court received into evidence, over objection, two exhibits which are the birth certificates of the complaining witness and the defendant, and which had not previously been produced for the defendant's inspection, pursuant to the court's pretrial discovery order. Neb. Rev. Stat. § 29-1919 (Reissue 1979) states that if, at any time during the course of the proceedings, it is brought to the attention of the court that a party has failed to comply with orders for discovery, the court may do one of four things. Under subsection (4) of that statute, the court may "[e]nter such other order as it deems just under the circumstances." That section gives the District Court broad discretion under the circumstances which may exist. See *State v. Batchelor*, 191 Neb. 148, 214 N.W.2d 276 (1974). We find that the District Court did not abuse its discretion in determining that the defendant was not prejudiced by the failure of the State to present the birth certificates to the defendant's counsel prior to trial, as required by the discovery order.

The defendant's fifth assignment of error is that the trial court refused to instruct the jury, as proposed by the defendant, on lesser-included offenses. Specifically, the defendant requested the court to instruct the jury on second degree sexual assault as a lesser-included offense. Second degree sexual assault requires only sexual contact as opposed to sexual penetration. This court has uniformly applied the rule that: "When the evidence entirely fails to show an offense of a less degree than that charged in the information it is not prejudicial error to omit to give an instruction defining an offense of such less degree." *State v. Tamburano*, 201 Neb. 703, 706-07, 271 N.W.2d 472, 474 (1978).

In *Tamburano*, we made it clear that where the prosecution has offered uncontroverted evidence on an element necessary for conviction of the greater

crime, but not necessary for the lesser offense, the defendant must offer at least some evidence to dispute the issue if he wishes to have the benefit of a lesser-included offense instruction. The defendant points to the testimony of the victim that her pelvic region was fondled by the defendant as being evidence of second degree sexual assault. However, defendant produced no evidence to controvert her testimony that there was penetration. The case at bar is similar to the *Tamburano* case in that, in both cases, the sole evidence relating to sexual penetration was that of the victim and in both cases, evidence included the defendant's bloody clothing. In *Tamburano*, the defendant did not testify and in this case the defendant did testify, but he could not remember what, if anything, happened on the way to H's home. The trial court committed no error in refusing an instruction on a lesser-included offense where there was no evidence to require it.

The sixth and final assignment of error is that the District Court refused to give defendant's proposed cautionary instruction advising how easy it is for a person to accuse another of first degree sexual assault and to require the jury to examine the testimony of the victim with caution. A similar complaint was made by the defendant in *Fulton v. State*, 163 Neb. 759, 81 N.W.2d 177 (1957). This court held that the instructions given, particularly instruction No. 18, which in substance advised the jury of the grave importance of its factfinding function in the administration of justice, were sufficient. Strangely enough, the trial court's instruction No. 22 in this instance was essentially identical with instruction No. 18 in *Fulton, supra.* Additionally, here the trial court gave the required NJI instructions relating to the function of the jury, burden of proof, reasonable doubt, and the elements of the crime. The court may properly refuse a requested instruction where the substance of the request is covered in those actually given. *State v. Samuels*, 205 Neb. 585, 289 N.W.2d 183 (1980).

The defendant's assignments of error are not sustained by the record, and the judgment of the trial court is affirmed.

AFFIRMED.

CLINTON, J., not participating.

KRIVOSHA, C.J., concurring.

I concur fully with the results reached by the majority in this case. I write separately, however, because I think it unnecessary for us to decide whether appellant had a legitimate expectation of privacy in the calf shed where the blue jeans were found in this case that would give rise to a fourth amendment right.

We have found in this case that a search warrant was obtained which, by description, included the calf shed as part of the curtilage. Having made that determination, I see no purpose in declaring that appellant had a legitimate expectation of privacy under the facts.

The facts disclose that appellant did not even know that the blue jeans had been placed in the calf shed and that, in fact, they had been hidden by appellant's wife without his knowledge or permission. Does one have a legitimate expectation of privacy in property which has been unknowingly taken from one and hidden without one's knowledge? The recent U.S. Supreme Court decisions of *Rawlings v. Kentucky*, __ U.S. __, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980), and *United States v. Salvucci*, __ U.S. __, 100 S. Ct. 2547, 65 L. Ed. 2d 619 (1980), at least raise some serious question about when a person has a legitimate expectation of privacy so that a claim based upon a fourth amendment violation can be raised or entertained. Unlike the majority who specifically find herein that, under the facts, appellant had a reasonable expectation of privacy in the calf shed, I would defer that question to another time and another case. Here, there was a warrant which did include the shed. Our discussion about appellant's legitimate expectation of privacy seems to me to be gratuitous. I would await answering the question of whether

one has a legitimate expectation of privacy in absconded property to a case which requires us to answer that question after the parties have fully and adequately briefed and argued the question to us. The answer to that question may not be quite as clear as we have indicated in our majority opinion today.