**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Forrest GORMAN, Defendant–Appellee.**

No. 95–10410.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 15, 1996.

Decided Dec. 30, 1996.

---

Louis A. Bracco and Craig H. Nakamura, Assistant United States Attorneys, District of Hawaii, Honolulu, HI, for plaintiff-appellant.

Loretta A. Faymonville, Assistant Federal Public Defender, Districts of Hawaii and Guam, Honolulu, HI, for defendant-appellee.

Before: WIGGINS and TROTT, Circuit Judges, and VANCE, District Judge.*

TROTT, Circuit Judge:

The issue raised in this appeal is whether a search warrant authorizing the search of a residence also authorizes without so stating the search of the residence's curtilage. We hold that it does.

## BACKGROUND

Hawaiian law enforcement officers were told by an informant that Forrest Gorman was selling marijuana from inside an old and immobile bus located on Gorman's property. Gorman was using the bus as a residence. In order to corroborate the informant's story, the officers asked him to purchase marijuana from Gorman while the officers watched from a distance. The informant agreed, and based upon the information gathered from ensuing controlled purchases, the officers obtained a warrant authorizing a search of the bus for marijuana, other controlled substances, drug paraphernalia, and related records. The warrant stated in pertinent part:

YOU ARE COMMANDED TO SEARCH:
1. A bus, grayish green in color, located on the curtilage of the residential property identified as 56–1211 Kamehameha Highway, further described as being situated parallel to Kamehameha Highway, approximately 30 feet on the Kahuku side of the driveway entrancing the property and having the entrance to the bus facing the makai direction.

Approximately nineteen law enforcement officers executed the warrant. Agent Robin Dinlocker, who was assigned during the

---

*The Honorable Sarah S. Vance, United States District Judge for the Eastern District of Louisiana, sitting by designation.

search to secure the perimeter of the property, noticed a large plastic translucent jar partly buried beside some lawn chairs outside the bus-residence. Dinlocker picked up and opened the jar. In it, she found bullets, blasting caps, and a loaded .32 caliber revolver. As a result of this discovery, Gorman was charged with being a felon in possession of a firearm under 18 U.S.C. § 922(g).

Gorman moved to suppress the gun. The district court granted Gorman's motion, holding that although the jar and gun were within the bus-residence's curtilage, the warrant on its face authorized a search of only the bus, not the bus's curtilage. This timely appeal followed.

### DISCUSSION

■ We review *de novo* the district court's determination that the officers exceeded the scope of the warrant. *United States v. Becker,* 929 F.2d 442, 446 (9th Cir.), *cert. denied,* 502 U.S. 862, 112 S.Ct. 183, 116 L.Ed.2d 145 (1991). In order to determine the whether evidence should be excluded, we use an objective test: would a reasonable officer have interpreted the warrant to permit the search at issue. *See United States v. Leon,* 468 U.S. 897, 918–19, 104 S.Ct. 3405, 3418–19, 82 L.Ed.2d 677 (1984) (exclusionary rule should not be applied to deter objectively reasonable law enforcement activity); *United States v. Traylor,* 656 F.2d 1326, 1331 (9th Cir.1981) (search warrants must be read in a common sense and realistic fashion).

At common law, curtilage was the area outside the walls of a home from which theft at night amounted to burglary, *United States v. Van Damme,* 48 F.3d 461, 464 (9th Cir. 1995). More recently, the curtilage of a home sometimes has been used to define the area in which it is not necessary to retreat before using deadly force in self-defense. *See e.g., McNutt v. State,* 121 So. 432, 434, 23 Ala.App. 43 (1929); *State v. Jackson,* 227 S.C. 271, 87 S.E.2d 681 (1955). "Curtilage" has also been defined as "the area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life.'" *Oliver v. United States,* 466 U.S. 170, 180, 104 S.Ct. 1735, 1742, 80 L.Ed.2d 214 (1984) (*quoting Boyd v. United States,* 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886)). For the purposes of the Fourth Amendment, curtilage is important because it extends to a larger area the right to privacy a person enjoys inside the home: "[A]n individual may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home." *Id.* at 178, 104 S.Ct. at 1741.

■ To determine whether an area is part of the curtilage, we look at four factors which indicate how intimately the area is tied to the home itself: (1) the area's proximity to the home, (2) whether the area is included within an enclosure surrounding the home, (3) whether the area is being used for the intimate activities of the home, and (4) the steps taken by the resident to protect the area from observation by passersby. *United States v. Dunn,* 480 U.S. 294, 301, 107 S.Ct. 1134, 1139–40, 94 L.Ed.2d 326 (1987). We conclude that the district court's determination that the area in which the jar and the pistol were found qualified as the bus's curtilage was correct.

■ The Supreme Court has said that the curtilage "has been considered part of the home itself for Fourth Amendment purposes." *Oliver,* 466 U.S. at 180, 104 S.Ct. at 1742. The curtilage is simply an extension of the residence's living area, and we have previously held that such extensions become part of the residence for purposes of a search warrant. In *United States v. Elliott,* 893 F.2d 220, 225 (9th Cir.), *modified,* 904 F.2d 25 (9th Cir.), *cert. denied,* 498 U.S. 904, 111 S.Ct. 268, 112 L.Ed.2d 224 (1990), we upheld the search of a storeroom pursuant to a warrant to search a certain apartment. Because the storeroom was accessible through a concealed hole in the apartment's bathroom, the room was considered to be part of the apartment itself. In *United States v. Frazin,* 780 F.2d 1461, 1467 (9th Cir.1986), we explained that a warrant to search a residence automatically authorizes the search of an attached garage because "[n]o reason exists to distinguish an attached garage from the rest of the residence for Fourth Amendment purposes."

Additionally, several state courts have held that the Fourth Amendment is not violated by a search of the grounds or outbuildings within a residence's curtilage where a warrant authorizes a search of the residence. *See, e.g., Nebraska v. Vicars,* 207 Neb. 325, 299 N.W.2d 421, 425 (1980) (warrant authorizing search of defendant's residence permitted search of a calf shed 100 feet away from the house on the opposite side of a chain link fence); *State v. Trapper,* 48 N.C.App. 481, 269 S.E.2d 680, 684 (1980) (warrant authorizing search of housetrailer permitted search of a tool shed 30 feet away); *State v. Stewart,* 129 Vt. 175, 274 A.2d 500, 502 (1971) (warrant authorizing search of house permitted search of tree in the backyard because the tree was within the curtilage).

Similarly, the Supreme Court has held that a warrant authorizing a search of an area generally authorizes the search of all of that area's subareas even though they are not mentioned in the warrant itself.

> [A] warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found. A warrant to open a footlocker to search for marihuana would also authorize the opening of packages found inside. A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search.

*United States v. Ross,* 456 U.S. 798, 821, 102 S.Ct. 2157, 2171, 72 L.Ed.2d 572 (1982). We are unable to identify a privacy based reason why this principle should be restricted to the inside of a residence and stop at the residence's threshold to the backyard, or curtilage. If a search warrant specifying only the residence permits the search of "closets, chests, drawers, and containers" therein where the object searched for might be found, so should it permit the search of similar receptacles located in the outdoor extension of the residence, i.e., the curtilage, such as the container in this case. To hold otherwise would be an exercise in pure form over substance.

As a district court in the Eleventh Circuit has explained in a similar case involving the permissive scope of a search,

> It seems logical and reasonable that a search warrant that authorizes intrusion on this greater area of privacy would include authorization for intrusion in the lesser area of privacy, the backyard. It is a basic rule of logic that the greater generally includes the lesser.
>
> . . . .
>
> Plain reading and common sense are the landmarks for the execution and interpretation of the language of a search warrant. As discussed earlier, there is no room in the midst of a criminal investigation for hypertechnical reading or interpretation of a search warrant.

*United States v. Brown,* 822 F.Supp. 750, 754 (M.D.Ga.1993) (citations omitted), *aff'd,* 50 F.3d 1037 (11th Cir.1995). Thus the search of the curtilage in this case was authorized because it was inseparable for privacy purposes from the bus-residence identified in the warrant.

■ Finally, even if we were to decide that the curtilage was not included within the scope of the warrant, we would not apply the exclusionary rule here. The exclusionary rule is designed to deter police misconduct; it should not be applied to deter "objectively reasonable law enforcement activity." *Leon,* 468 U.S. at 919, 104 S.Ct. at 3418. Here it would be objectively reasonable for law enforcement officials to believe that the curtilage search was authorized by the warrant. Every published opinion addressing the issue has concluded that a warrant authorizing the search of a residence automatically authorizes a search of the residence's curtilage. *See Brown,* 822 F.Supp. at 754; *Nebraska v. Vicars,* 207 Neb. 325, 299 N.W.2d 421, 425 (1980) (citing *Ford v. State,* 245 P. 909, 910 (Okl.1926); *Seals v. State,* 157 Tenn. 538, 11 S.W.2d 879, 881 (1928); *Meek v. Pierce,* 19 Wis. 300, 302 (1865)); *Vermont v. Potter,* 148 Vt. 53, 529 A.2d 163, 168 (1980); *Brown v. Georgia,* 262 Ga. 728, 425 S.E.2d 856, 857–58 (1993); *Kansas v. Basurto,* 15 Kan.App.2d 264, 807 P.2d 162, 163–65; *aff'd,* 249 Kan. 584, 821 P.2d 327 (1991); *North Carolina v. Trapper,* 48 N.C.App. 481, 269 S.E.2d 680,

684 (1980). Accordingly, even if we had decided that the curtilage was not part and parcel of the home, we would not exclude the gun. *See United States v. Dahlman*, 13 F.3d 1391, 1397 (10th Cir.1993) (although warrant was overbroad, evidence would not be excluded because officer's interpretation was consistent with precedent from other circuits) *cert. denied*, 511 U.S. 1045, 114 S.Ct. 1575, 128 L.Ed.2d 218.

## CONCLUSION

We reverse the district court's order suppressing the challenged evidence and remand for further proceedings consistent with this opinion.