944 A.2d 1222

**Herbert Johnson WALLS**

v.

**STATE of Maryland.**

**No. 1849, Sept. Term, 2006.**

Court of Special Appeals of Maryland.

March 28, 2008.

236

Mark Colvin (Nancy S. Forster, Public Defender, on the brief), Baltimore, for appellant.

Brian S. Kleinbord (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, for appellee.

Panel: SALMON, DEBORAH S. EYLER and MEREDITH, JJ.

DEBORAH S. EYLER, J.

In the Circuit Court for Harford County, Herbert Johnson Walls, the appellant, was charged by indictment with possession with intent to distribute marijuana, possession with intent to distribute cocaine, possession of marijuana, possession of cocaine, two counts of possession with intent to distribute drug paraphernalia, and maintaining a common nuisance, specifically a house used for the purpose of illegally manufacturing, distributing, storing, and concealing cocaine. Before trial, the appellant filed a motion to suppress all items seized from a storage shed on the property where he resided on the ground that the warrant did not authorize a search of the shed or any other outbuilding on the property. After a hearing, the court denied the motion.

The appellant was tried by the court on a not-guilty agreed statement of facts on the charge of possession with intent to distribute cocaine. All other charges were *nolle prossed.* The court found the appellant guilty. It sentenced him to 40 years' incarceration, all but 25 years suspended, and two years' supervised probation upon release. This appeal followed.

The sole issue on appeal is whether the circuit court erred in denying the motion to suppress. Finding no error, we shall affirm the judgment.

## FACTS AND PROCEEDINGS

The following facts were adduced at the suppression hearing. On October 21, 2005, Detective Sean Marston of the Harford County Sheriff's Office applied for a search warrant for the appellant's residence at 30 Liberty Street, in Aberdeen. The application and supporting affidavit provided, in relevant part:

APPLICATION is herewith made for Search and Seizure Warrant in that there is probable cause to believe the laws relating to ... controlled dangerous substances ... are being violated in and upon a certain premise and vehicles known as: **30 Liberty Street, Aberdeen, Harford County, Maryland 21001 and are being violated by Herbert Johnson Walls, a black male, with a date of birth of 02/05/1954.**

Said premise is described as a single story duplex which is tan in color with white trim around the windows, a white storm and front door, and the numerals "30" to the left of the door on a dark colored shutter. There is a wooden porch with three stairs leading up to the door. Furthermore, said premise is known to, and can be identified by your affiant.

\* \* \*

Your affiant avers that based on the totality of the circumstances and your affiant's training, knowledge and experience acquired during the aforementioned schools and investigation, that based on the information received from CI–1 that Walls is selling CDS, the controlled purchase of crack cocaine from Walls, the positive field test of the purchased crack cocaine, the surveillance conducted on Walls placing him and his vehicles at 30 Liberty street before the controlled buy and returning to 30 Liberty Street after the controlled buy of crack cocaine, the positive identification of Herbert Walls by CI–1, the four tips received between 2002 and 2005 for Herbert Walls selling CDS at the 30 Liberty Street address, the criminal history of Walls

showing multiple felony arrests for CDS, the recent search warrant conducted at Walls['] residence of 30 Liberty Street in February 2005 with the subsequent recovery of approximately 19 grams of crack cocaine, the recent traffic stop of Walls in February 2005 with the subsequent recovery of approximately 16 grams of crack cocaine, that there is probable cause to believe and your affiant does believe, that the law relating to the manufacturing, sale and/or possession with intent to distribute controlled dangerous substances, as herein before cited are being violated in and upon the premise herein before described as:

30 Liberty Street, Aberdeen,

\* \* \*

Now, therefore, pursuant to the provisions of Criminal Law Article Sections 1–203, your affiant prays that a search and seizure warrant be issued authorizing him, with the necessary and proper assistance to:

A: Enter and search the person(s) and premises completely described above;

B: Search the person(s) and clothing of any and all persons found in or upon said premises who may be participating in violations of the statutes herein before cited;

C: Open and search any and all safes, boxes, bags, compartments or things in the nature thereof found in or upon said premises or person(s);

(Emphasis in original.)

The application and affidavit were attached to the proposed search and seizure warrant, which likewise provided, in part:

Whereas it appears to me, . . . by written information of the affiant, hereinafter named, that there is probable cause that a crime is being committed, and that the laws relating to the illegal Manufacturing, Distribution, Possession with Intent to Distribute controlled dangerous substances and Possession of controlled dangerous substances, . . . including narcotics, hallucinogenic and dangerous drugs, are being violated in and upon a certain premise known as:

30 Liberty Street, Aberdeen, Harford County, Maryland 21001 and is being violated by Herbert Johnson Walls, a black male, with a date of birth of 02/05/1954.

Said premise is described as a single story duplex which is tan in color with white trim around the windows, a white storm and front door, and the numerals "30" to the left of the door on a dark colored shutter. There is a wooden porch with three stairs leading up to the door. Furthermore, said premise is known to, and can be identified by your affiant.

The name of your affiant is Detective Sean Marston, of the Harford County Sheriff's Office, currently assigned to the Harford County Task Force.

The grounds for the search warrant and the basis for probable cause are set forth in the Application and Affidavit which is attached hereto and made part of the Search and Seizure [sic].

Now therefore, pursuant to the provisions of Criminal Law Article Sections 1–203 of the Maryland Criminal Laws Annotated, 2003 edition, as amended or revised, you are hereby commanded, with the necessary and proper assistance to:

A: Enter and search the person(s) and premises completely described above;

B: Search the person(s) and clothing of all persons found in or upon said premises who may be participating in violations of the statutes herein before cited;

C: Open and search any and all safes, boxes, bags, compartments or things in the nature thereof found in or upon said premises or person(s);

D: Seize all evidence, paraphernalia and money used in or incidental to the conduct or operation of controlled dangerous substance violations, found in or upon said premise and person(s) in close proximity to contraband, controlled dangerous substances or controlled dangerous substance paraphernalia;

\* \* \*

F: Seize articles of personal property tending to establish or corroborate the identity of the person or persons in control of the premises consisting of and including, but not limited to, utility company receipts, rent receipts, canceled mail, motor vehicle information and keys;

\* \* \*

H. Arrest all person(s) found in or upon said premise who may be participating in violations of the statutes herein before cited,

(Emphasis in original.) The search and seizure warrant was issued on October 21, 2005.

Detective Marston testified that, on October 26, 2005, he executed the search and seizure warrant at 30 Liberty Street. The backyard at that location was completely fenced in. There was a shed located in the backyard, about 20 to 25 feet from the house. The shed was locked with a padlock. According to Detective Marston, a K-9 dog first scanned the shed and, thereafter, the appellant's key was used to unlock the padlock.[1] Lawn equipment, drugs, and paraphernalia were found in the shed.

On cross-examination, Detective Marston acknowledged that the shed was located at the rear of the yard, almost flush with a fence that separated the backyards of the properties on Liberty Street from the Aberdeen Proving Grounds. He also acknowledged that the application for the search and seizure warrant did not contain any specific mention of the shed or anything stored in it. He explained, however, that, while searching the house, he received information from Detective Webster of the Aberdeen Police Department that the appellant was storing controlled dangerous substances ("CDS") in the shed behind the residence. Detective Webster made it

---

1. The outcome of the K-9 scan was not adduced at the suppression hearing. In fact, neither testifying detective was asked about the outcome of the scan.

known that he had received that information from a confidential informant, who had advised that the appellant had begun storing CDS in the shed after a task force had raided his house earlier in 2005.

Detective Todd Harmel of the Harford County Task Force similarly testified that the backyard of 30 Liberty Street was completely fenced in, that the shed was located approximately 20 feet from the house and backed up to a portion of the fence dividing the property from the Aberdeen Proving Grounds, and that the padlock on the shed was opened using a key.

Defense counsel argued in support of the suppression motion that the search and seizure warrant lacked the particularity and specificity required by the Fourth Amendment. Specifically, the warrant said "premise" known as 30 Liberty Street, as opposed to "premises," and failed to mention any other buildings, including the storage shed. He further argued that, even if buildings within the curtilage were implicitly included in the warrant, the shed at issue was not within the curtilage. In addition, defense counsel asserted that the shed was used for the appellant's lawn care business and not for domestic purposes.

The State countered that the shed was within the curtilage of the residence and, therefore, was lawfully searched.

On August 31, 2006, the circuit court issued a written memorandum opinion denying the appellant's motion to suppress and stating, in part:

30 Liberty Street is a duplex home located on a small lot. The shed in question is in the rear yard of the home and is located between twenty and twenty-five feet from the house. The rear yard is completely fenced. A part of that fencing was erected by the federal government since the property backs up to the Aberdeen Proving Grounds. One side of the yard is fenced with a privacy fence and the other side is fenced with a chain link type fence. The application for a warrant and the warrant itself was introduced in evidence as State's Exhibit # 1. On the first page of the warrant, the property is referred to as the "premise" known

as 30 Liberty Street Aberdeen, Harford County, Maryland. However, the authorization to search reads as follows: "Now therefore, pursuant to the provisions of Criminal Law Article Sections 1–203 of the Maryland Criminal Laws Annotated, 2003 edition, as amended or revised, you are hereby commanded, with the necessary and proper assistance to:

A: Enter and search the person(s) and *premises* (emphasis supplied) completely described above;

B: Search the person(s) and clothing of all persons found in or upon said *premises* who may be participating in violations of the statutes herein before cited;

C: Open and search any and all safes, boxes, bags, compartments or things in the nature thereof found in or upon said *premises* or person(s);

D: Seize all evidence, paraphernalia and money used in or incidental to the conduct or operation of controlled dangerous substance violations, found in or upon said *premise* and person(s) in close proximity to contraband, controlled dangerous substances or controlled dangerous substance paraphernalia. . . .

F: Seize articles of personal property tending to establish or corroborate the identity of the person or persons in control of the *premises* consisting of and including, but not limited to, utility company receipts, rent receipts, canceled mail, motor vehicle information and keys. . . .

H: Arrest all person(s) found in or upon said *premise* who may be participating in violations of the statutes herein before cited, and; . . . "

By my count, the term "premise" is used in the warrant four times and the term "premises" is used four times. The Merriam–Webster's Collegiate Dictionary, Tenth Edition, defines the term premise, when used in the plural, i.e. premises, as: "(a) a tract of land with the buildings thereon; (b) a building or part of a building usually with its appurtenances (as grounds)."

\* \* \*

We conclude that the term "premise" as used in the warrant was a typing error and that the word intended was "premises." Typist[s], including this writer, frequently rely on Spell Check to locate errors and Spell Check does not highlight such a typing error since both words are correct words. However, the term "premise" simply has no application to the description of property. The use of the term "premise" and "premises" in the same document further convince us that the person drafting the document meant to use the term in the plural, describing a property and its appurtenances located at 30 Liberty Street.

The use of the term "in or upon" the premises, further shows an intent for the warrant to apply to the property of 30 Liberty Street and not just the interior of the house. Certainly, the defendant in this case would not have been immune from arrest because he was standing in the backyard of the property and not inside the house when the police arrived.

\* \* \*

In the instant case, we conclude that the shed in question was a part of the curtilage of 30 Liberty Street. The shed was within twenty to twenty-five feet of the house. It was in a fully fenced yard. It was locked so that those passing by could not readily gain entry and it gave no external appearance of being anything other than a utility shed that is commonly found in the rear yard of homes. Defendant makes the argument that the shed was used for his lawn mowing business and therefore was not appurtenant to his home. However, there was nothing external that would give notice that this was a business property. There were no signs advertising a lawn mowing business nor were there any other indicia of business activity. Normally, the operation of a business in a residential area runs a foul [sic] of the zoning laws unless it is strictly an accessory to the use of the home.

In short, we conclude that the words "premise" and "premises" [ ] as used in the warrant, means "premises" and conclude that the warrant clearly directed the search of the property known as 30 Liberty Street and includes the house and its appurtenances, including the storage shed in question. The fact that the defendant ran his lawn mowing business and his CDS distribution business from the shed does not save it from this search. There was no more severe intrusion resulting from the search of the shed than there was from a search of the house.

For the reasons set forth above, the motion to suppress the evidence seized f[rom] the storage shed at 30 Liberty Street, Aberdeen, Harford County, Maryland is hereby denied.

(Emphasis in original.)

## DISCUSSION

In considering the denial of a motion to suppress, we are limited to the record of the suppression hearing and do not consider the trial record. *Myers v. State*, 395 Md. 261, 274, 909 A.2d 1048 (2006); *State v. Green*, 375 Md. 595, 607, 826 A.2d 486 (2003) (citing *Dashiell v. State*, 374 Md. 85, 93, 821 A.2d 372 (2003)). We view the evidence and all reasonable inferences drawn from that evidence in the light most favorable to the prevailing party, in this case, the State. *Myers*, 395 Md. at 274, 909 A.2d 1048; *Laney v. State*, 379 Md. 522, 533, 842 A.2d 773 (2004); *Green*, 375 Md. at 607, 826 A.2d 486. We extend great deference to the fact-finding of the suppression court and accept the first-level facts as found, unless clearly erroneous, giving due regard to the court's opportunity to assess the credibility and demeanor of witnesses. *Myers*, 395 Md. at 274, 909 A.2d 1048; *Green*, 375 Md. at 607, 826 A.2d 486. As to the ultimate determination of whether there was a Fourth Amendment violation, we make our own independent constitutional appraisal by reviewing the law and applying it to the facts of the case. *Laney*, 379 Md. at 533–34, 842 A.2d 773; *Dashiell*, 374 Md. at 93–94, 821 A.2d 372; *Jones v. State*, 111 Md.App. 456, 466, 681 A.2d 1190, *cert. denied*, 344

Md. 117, 685 A.2d 451 (1996) (citing *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)).

 The appellant contends the evidence seized from the shed behind his house should have been suppressed because the search of the shed was beyond the scope of the warrant. In support, he directs our attention to the Warrant Clause of the Fourth Amendment, which provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized," U.S. CONST. amend. IV, and to the analog provision in Article 26 of the Maryland Declaration of Rights that "all general warrants to search suspected places ... without naming or describing the place ... are illegal, and ought not be granted." MD. CONST. art. 26.[2]

 As the Supreme Court has observed, the warrant particularity requirement guards against general searches by insuring that searches are limited to the places particularly described in the warrants authorizing them:

> The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one "particularly describing the place to be searched and the persons or things to be seized." The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit. Thus, the scope of a lawful search is "defined by the object of the search and the places in which there is probable cause to believe that it may be found. Just as probable cause to believe that a stolen

---

2. Maryland interprets Article 26 *in pari materia* with the United States Supreme Court's interpretation of the Fourth Amendment. *Givner v. State*, 210 Md. 484, 492–93, 124 A.2d 764 (1956) (Brune, C.J.). The appellant does not argue otherwise.

lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase." *Maryland v. Garrison,* 480 U.S. 79, 84–85, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987) (footnote and citations omitted).

The appellant maintains that the search and seizure warrant allowed the police to enter and search only the area that was described; and that that area did not include the shed because the shed was not mentioned in either the application or the warrant itself. He points out that there is nothing in the record to indicate that Detective Marston knew prior to the time of the search that there was a shed on the property or that there was probable cause to believe that it contained CDS or any other contraband. In short, the appellant maintains that the suppression court ignored the specific and detailed description of the "premise" or "premises" contained in both the application and the warrant, and that description limited the scope of the search to the appellant's house. We disagree and explain.

■ As the suppression judge observed, the words "premise" and "premises" were used interchangeably throughout the application and the warrant. In legal parlance, the word "premise" means "[a] previous statement or contention from which a conclusion is deduced," which has no relevance to a tract of land. BLACK'S LAW DICTIONARY 1219 (8th Ed.2004). The word "premises" is separately defined to mean "a house or building along with its grounds." BLACK'S LAW DICTIONARY 1219. Likewise, in A DICTIONARY OF MODERN LEGAL USAGE (2d Ed.1995), the words "premise" and "premises" are separately defined. With respect to "premises," the author notes:

The term always takes a plural verb—e.g.: "The *premises* were put under surveillance." And it is improper to shorten *premises*—in the sense of a building together with its grounds—to the singular *premise*. *E.G.*, "[A no-knock provision allows] law-enforcement officers to enter a *premise* [read *premises* ] forcibly, without announcing their presence

before entering, under certain circumstances." Ralph De Sola, *Crime Dictionary*, 103 (1982).

MODERN LEGAL USAGE, at 685.

In ordinary usage, the word "premises" is defined as a building and appurtenant grounds, but the definition is characterized as a plural meaning of the word "premise." *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 980 (11th Ed.2003), identifying the third usage of "premises" as the plural of "premise" and defining it as "a tract of land with the buildings thereon" or "a building or part of a building usu. with its appurtenances (as grounds)." Indeed, in RANDOM HOUSE WEBSTER'S COLLEGE DICTIONARY (1996), the word "premises" is classified as a second meaning of "premise," and is defined as "a tract of land including its buildings."

To be sure, the warrant application and the warrant itself are legal writings in which, following strict legal usage, use of the singular word "premises" to describe "30 Liberty Street, Aberdeen, Harford County, Maryland 21001" is correct and use of the singular word "premise," which has nothing to do with land, is not. The documents were drafted by police officers, in the usual course of their work, not by legal linguists, and should not be read hypertechnically. It is clear from the context that the words "premise" and "premises" in the application and warrant were being used to mean "premises"—that is, a tract of land with its buildings and grounds; and that the word "premise" merely was a mistaken use of a nonexistent singular form of "premises," which is itself a singular word.[3] The application and warrant properly were

---

3. The interpretation issue here is unlike the typographical error problem addressed in *Greenstreet v. State,* 392 Md. 652, 898 A.2d 961, (2006). In that case, the Court held that a police officer could not testify that the date in the affidavit in support of search warrant was a typographical error—that instead of "4–14–03," it should have been "4–14–04." The Court reasoned that permitting such testimony would allow the officer to controvert his statement of the date in the affidavit, in "violation of the four corners rule and the purpose for its existence." *Id.* at 671, 898 A.2d 961. Here, the words "premise" and "premises" both are used in the application and warrant, and therefore we properly may infer that one word ("premise") is a mistaken use or spelling of the

read by the circuit court to refer to the "premises," *i.e.*, the building and grounds at 30 Liberty Street.

■ Upon determining that the warrant applied to the premises, the suppression court properly concluded that the appellant's shed was within the curtilage of 30 Liberty Street. The Fourth Amendment's protection of a person's home from unreasonable searches and seizures extends to the home's curtilage, that is, to the land immediately surrounding and associated with the residence. *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). In *Oliver*, the Supreme Court defined curtilage as "the area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life,'" and distinguished between the curtilage of a home and open fields, to which an individual has no legitimate expectation of privacy or freedom from warrantless intrusion by government officials. 466 U.S. at 180–81, 104 S.Ct. 1735 (quoting *Boyd v. United States*, 116 U.S. 616, 630, 6 S.Ct. 524, 29 L.Ed. 746 (1886)).

In *United States v. Dunn*, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987), the Supreme Court refined its Fourth Amendment analysis of curtilage, identifying four factors that generally are to be included in an analysis of curtilage questions:

> the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

480 U.S. at 301, 107 S.Ct. 1134. These factors "are useful analytical tools only to the degree that, in any given case, they

---

other word ("premises"). *Greenstreet, supra,* at 672, 898 A.2d 961 (recognizing cases from other jurisdictions that "stand for the proposition that where a factual date in the affidavit material to the probable cause finding is an apparent typographical error because it is contradicted by another factual time or date more likely to be true, also contained within the four corners of the affidavit, then a reviewing court may infer that a typographical error was made by the affiant and treat it as something other than what was written in the affidavit.").

bear upon the centrally relevant consideration-whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Id.*

In the instant case, the undisputed testimony was that the shed was 20 to 25 feet from the appellant's house. The yard was fully fenced, with a privacy fence on one side and a fence on the back of the property that was erected by the federal government to separate properties on Liberty Street from the Aberdeen Proving Grounds. The shed was locked with a padlock, and there was nothing on its exterior to indicate that it was used for a lawn mowing or other business purpose, or that it was anything other than a common utility shed. These factors support the trial court's conclusion that the shed was, indeed, part of the curtilage of 30 Liberty Street.

The question to be decided, therefore, is whether the warrant issued for the subject premises was sufficient to allow a search of the shed located within the curtilage, but not specifically described in the warrant. The appellant has not directed our attention to any Maryland case, nor have we found any, that prohibits the police from searching a shed or other outbuilding located within the curtilage of a dwelling house pursuant to a warrant authorizing a search of the premises.

Some courts in other jurisdictions have determined that the search of a shed or other outbuilding located within the curtilage of a property is improper when the search warrant fails to specifically describe it. For example, in *People v. Caruso,* 174 A.D.2d 1051, 572 N.Y.S.2d 216 (1991), the court held that a search warrant authorizing the search of the defendant's residence, and describing the house in detail, did not authorize a search of a shed. The court, noting that the authority to search is limited to the place described in the warrant, emphasized that " 'nothing should be left to the discretion of the searcher in executing the warrant.' " *Id.* at 1051, 572 N.Y.S.2d 216 (quoting *People v. Nieves,* 36 N.Y.2d 396, 401, 369 N.Y.S.2d 50, 330 N.E.2d 26 (1975)).

Similarly, in *People v. Mackey,* 121 Mich.App. 748, 329 N.W.2d 476 (1982), the court held that the search pursuant to a warrant of a shed located within the curtilage of a farmhouse was improper because the warrant did not describe with specificity either the dwelling house or the shed, and the defendant had an expectation of privacy in the shed under the Michigan Constitution. *Id.* at 757–58, 329 N.W.2d 476.

Likewise, in *McTyre v. State,* 113 Tex.Crim. 31, 19 S.W.2d 49 (1929), the court, noting that a search warrant for a "private residence, outbuildings, and premises" occupied by the defendant was governed by the description of the place to be searched that was included in the affidavit, held that the search warrant did not authorize the search of an outhouse, not described in the affidavit supporting the warrant application but located within the curtilage of the residence.[4] 19 S.W.2d at 50–51.

Numerous other courts, however, have held that sheds and other outbuildings within the curtilage of a residential property are within the scope of a search warrant authorizing a search of the premises. In *United States v. Cannon,* 264 F.3d 875 (9th Cir.2001), *cert. denied,* 534 U.S. 1143, 122 S.Ct. 1097, 151 L.Ed.2d 994 (2002), the Ninth Circuit held that a search warrant specifying a certain single family residence included all other buildings and other objects within the curtilage of that residence, even if not specifically referenced in the search warrant. In reaching that conclusion, the court relied on the following language from *United States v. Gorman,* 104 F.3d 272, 275 (9th Cir.1996), in which it had held that the Fourth Amendment is not violated by a search of the grounds or

---

4. The *McTyre* case has been distinguished on a number of occasions. *See, e.g., Davila v. State,* 871 S.W.2d 806 (Tex.App.1994) (warrant authorizing search of house also permits search of other structures inside the curtilage); *Walbey v. State,* 644 S.W.2d 813 (Tex.App.1982) (search of an enclosed patio outside defendant's apartment did not exceed scope of warrant for the apartment, noting that outhouse in *McTyre* was not attached to residence or necessary to the structure being searched); *Comeaux v. State,* 118 Tex.Crim. 223, 42 S.W.2d 255 (Tex.Ct.App.1931) (warrant authorizing search of premises authorized search of garage on same lot as house).

outbuildings within a residence's curtilage when a warrant authorizes a search of the residence:

If a search warrant specifying only the residence permits the search of "closets, chests, drawers, and containers" therein where the object searched for might be found, so should it permit the search of similar receptacles located in the outdoor extension of the residence, i.e., the curtilage, such as the container in this case. To hold otherwise would be an exercise in pure form over substance.

*Cannon,* 264 F.3d at 880.

In *United States v. Griffin,* 827 F.2d 1108 (7th Cir.1987), *cert. denied,* 485 U.S. 909, 108 S.Ct. 1085, 99 L.Ed.2d 243 (1988), the search warrant in question authorized the search of premises described as a one-story frame house and a detached garage at a stated address. The officers executing the warrant not only searched the house and garage but also searched a tool shed in the backyard and an automobile in the driveway, and seized items from soil and rock in the backyard. The court noted that "the better practice would be to specify clearly in the warrant whether the entire premises or only some building on or portions of the premises are subject to search." 827 F.2d at 1115. It held, however, that the search was not limited by the absence of specific reference in the warrant to each and every building on the "premises." *Id.*

A number of state courts have reached the same conclusion. *See, e.g., Barton v. State,* 161 Ga.App. 591, 592, 288 S.E.2d 914 (1982) (holding that a search warrant authorizing the search of "premises" located at a certain address authorized the search of the entire curtilage, including a shed located about 20 feet behind the defendant's house, even though the shed was not specifically described); *People v. Muniz,* 198 Colo. 194, 198–99, 597 P.2d 580 (1979) (search of a shed in a fenced backyard approximately 30 feet from the house did not exceed the scope of the warrant); *Sowers v. State,* 724 N.E.2d 588, 591–92 (Ind.) (warrant to search a residence authorized search of a tent in the backyard), *cert. denied,* 531 U.S. 847, 121 S.Ct. 118, 148 L.Ed.2d 74 (2000); *State v. Basurto,* 15 Kan.App.2d 264,

269, 807 P.2d 162 (stating that there "appears to be little doubt that a search warrant which describes only the residence of defendant will authorize the search of any vehicles or buildings within the 'curtilage' of that residence"), *aff'd,* 249 Kan. 584, 821 P.2d 327 (1991); *State v. Brouillette,* 465 So.2d 124, 126 (La.Ct.App. 4th Cir.1985) ("A warrant authorizing the search of the 'premises' must reasonably be interpreted to include a search of the house, garage and other outbuildings which one normally associates with and includes in the word 'premises.' "); *Arnett v. State,* 532 So.2d 1003, 1009–1010 (Miss.1988) (storm shed approximately 150–175 feet from house is type of building used in connection with residence and is within curtilage of house); *State v. Vicars,* 207 Neb. 325, 330, 299 N.W.2d 421 (1980) (calf shed 100 feet from the house, on the opposite side of a chain link fence which surrounded the yard, was within the curtilage and, therefore, within the scope of a search warrant that described the place to be searched as the house only); *State v. Trapper,* 48 N.C.App. 481, 487, 269 S.E.2d 680 (1980) (warrant for the search of a house trailer also permitted search of a shed approximately 30 feet from the house trailer found to be within the curtilage), *cert. denied,* 451 U.S. 997, 101 S.Ct. 2338, 68 L.Ed.2d 856 (1981); *State v. Potter,* 148 Vt. 53, 61–62, 529 A.2d 163 (1987) (shed located approximately 15 feet from the house and within curtilage was within scope of warrant authorizing search of residence).

We find the reasoning of these latter cases persuasive. To be sure, the better practice would be to specify clearly in the application and warrant whether the entire premises or only some building on or portions of the premises are subject to the search. Nevertheless, the warrant that authorized the search of the premises described as 30 Liberty Street included outbuildings within the curtilage as ordinarily are associated with the word "premises," such as the appellant's shed. Accordingly, the circuit court did not err in denying the appellant's motion to suppress.

 Even if the warrant had not authorized a search of the shed, we would affirm the suppression court's decision

under the good-faith exception, which provides that evidence will not be suppressed when it is discovered by officers acting in good faith and in the reasonable, though mistaken belief, that they were authorized by a signed search warrant. *See United States v. Leon,* 468 U.S. 897, 924, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (evidence not rendered inadmissible when obtained by police officers acting in reasonable reliance upon a search warrant ultimately found to be unsupported by probable cause); *Patterson v. State,* 401 Md. 76, 110–111, 930 A.2d 348 (2007); *Connelly v. State,* 322 Md. 719, 727–30, 589 A.2d 958 (1991).

In *West v. State,* 137 Md.App. 314, 768 A.2d 150, *cert. denied,* 364 Md. 536, 774 A.2d 409 (2001), we explained the purpose of the good faith exception as follows:

> The [*Leon* ] Court emphasized that "the exclusionary rule was designed to deter police misconduct rather than to punish the errors of judges and magistrates." It said that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." In this regard, the Court questioned whether the exclusionary rule has a deterrent effect when the offending officers "acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment."

*Id.* at 351–52, 768 A.2d 150 (citations omitted) (quoting *Connelly,* 322 Md. at 727–30, 589 A.2d 958).

In the case at bar, as the warrant was not limited to the house only, but expressly authorized the police to enter and search the "premises" and to "[o]pen and search any and all safes, boxes, bags, compartments or things in the nature thereof found in or upon said premises or persons," it was not unreasonable for the executing officers to believe that they were authorized to search the appellant's shed.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**