[Cite as *State v. DeSarro*, 2026-Ohio-1672.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JOSEPH J. DESARRO II,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 25 CO 0028**

---

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2024-CR-169

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Vito J. Abruzzino,* Prosecuting Attorney, *Atty*. *Steven V. Yacovone,* Assistant Columbiana County Prosecutor, for Plaintiff-Appellee and

*Atty. Charles C. Amato,* Amato Law Office, L.P.A., for Defendant-Appellant.

Dated: May 7, 2026

**Robb, J.**

**{¶1}** Defendant-Appellant Joseph J. Desarro II appeals the decision of the Columbiana County Common Pleas Court denying his motion to suppress drugs found in a vehicle parked in his driveway after a drug dog alerted on it during the execution of a search warrant at the address of his place of residence. He contends the vehicle could not be searched because the search warrant did not mention a vehicle or curtilage, and he claims the state must prove exigent circumstances besides a vehicle's apparent mobility in order to apply the automobile exception to the warrant requirement. For the following reasons, the trial court's judgment is affirmed.

<u>STATEMENT OF THE CASE</u>

**{¶2}** After receiving numerous tips and conducting a lengthy investigation, a detective with the Columbiana County Sheriff's Department, who is also on the county drug task force, developed probable cause to believe Appellant was a large-scale drug trafficker storing drugs in hidden compartments in his house and was also a firearms dealer. (Supp.Tr. 11-13, 16, 26). On February 8, 2024, the court issued a search warrant on the detective's affidavit. The search warrant began by commanding law enforcement to search the:

> "person and/or place of [specified number] Cadmus St., East Liverpool, OH
> 43920, being a brown and white two-story house with covered front porch;
> and the resident Joseph Desarro . . ."

(Def.Ex. 1) (the specified address number has been omitted by this court).

**{¶3}** The warrant instructed law enforcement to seize all controlled substances or suspected controlled substances, including but not limited to crack cocaine, cocaine, fentanyl, as well as any other contraband, instrumentalities, evidence of manufacture, sale, trafficking, or use of drugs, along with firearms, deadly weapons, or ammunition, and many other described items, such as cash, devices, motor vehicle titles, and a multitude of other paperwork. *Id.* The warrant specified the right to unlock all containers and "areas within the premises" where evidence may reasonably be kept and to use a locksmith if necessary. *Id.*

<u>Case No. 25 CO 0028</u>

{¶4} The detective planned to execute the warrant on Monday, February 12, 2025, after arranging for the participation of approximately ten officers from both the sheriff's department and the East Liverpool Police Department. That weekend, the detective conducted some passing surveillance of Appellant's residence. On multiple passes, he saw a silver Chevrolet Suburban (hereinafter SUV) parked in the driveway. On one of these occasions, the detective saw Appellant sitting in the driver seat of the SUV with the door open and his feet outside of the vehicle for "quite a while" with other people located feet away on Appellant's front porch (as if perched in the seat to converse with the group). (Supp.Tr. 19-20).

{¶5} When the officers executed the warrant on Monday, they knocked and announced their presence; the detective noted it was "a good couple of minutes before" Appellant appeared. *Id.* at 29. Appellant had a bag of drugs in his crotch, $3,630 in his right pocket, and $3,000 in his left pocket. (Plea Tr. 34). In the toilet, the police found "pressed" fentanyl pills, which someone apparently attempted to flush away. (Supp. Tr. 15); (Plea Tr. 34).[1] Under a bathroom floorboard, they discovered cocaine and more fentanyl. (Supp.Tr. 15-16). In addition to the fentanyl pills, they recovered 20.65 grams of powdered fentanyl and 51.39 grams of cocaine. (Plea Tr. 35).

{¶6} During the search, the detective noticed numerous spaces cut from the drywall, confirming tips about secret compartments. (Supp.Tr. 16-17, 21). As a result, to ensure they did not miss any hidden drugs, they decided to call the K9 officer from the City of Columbiana Police Department, who was off work that day but reported to the scene when summoned. *Id.* at 21-22, 58, 71.

{¶7} The silver SUV was backed into the driveway mere feet from the house. *Id.* at 18-21, 59. The concrete for the one-car-wide driveway touched the side of the house and ran to the front porch steps as well. *Id.* at 34; (St.Ex. 1). The SUV was registered to Appellant's wife, who was not present at the house. *Id.* at 18-19, 28. An old pickup truck under a tarp was further back behind the house in the driveway. *Id.* at 17-18.

---

[1] "Drug traffickers use pill presses to press fentanyl into pills and punches and dies to imprint markings and logos onto those pills, producing pills that look like legitimate prescription medication . . . when those pills actually contain fentanyl, methamphetamine, and other deadly drugs." U.S. Drug Enforcement Administration, *Pill Press Resources*, https://www.dea.gov/resources/pill-press-resources (accessed Apr. 1, 2026).

**{¶8}** When the K9 officer arrived, the detective asked him to deploy the dog around the two vehicles in addition to inside the residence. *Id.* at 52, 58. Within a minute of deployment, the dog "bracketed" (zeroed in on) a spot and alerted on the passenger side of the SUV between the front and back door of the vehicle. *Id.* at 60-61, 66-67.

**{¶9}** Due to the dog's alert, the other officers searched the SUV. Although Appellant claimed he did not know the location of the keys because it was his wife's vehicle, it turned out the keys were among the items found on his person; the officers were able to unlock and start the SUV with those keys. *Id.* at 24-25, 31, 38. In a large bag of corn pop cereal in the backseat area of the SUV, the officers found a one-gallon zip-top bag filled with approximately 8,000 blue pills containing fentanyl. *Id.* at 22-23.

**{¶10}** Appellant was arrested. He waived a preliminary hearing in municipal court. On May 8, 2024, he was indicted on seven counts: (1) tampering with evidence; (2) trafficking in fentanyl (at least 1,000 unit doses); (3) trafficking in fentanyl (at least 20 grams); (4) possession of fentanyl (at least 20 grams); (5) possession of fentanyl (at least 1,000 unit doses); trafficking in cocaine (at least 27 grams); and possession of cocaine (at least 27 grams). Count one was a third-degree felony. Each remaining count was a first-degree felony with a forfeiture specification for the $6,920 seized from his person. The indictment also contained a major drug offender specification.

**{¶11}** Appellant filed a motion to suppress the evidence obtained during the search, alleging his Fourth Amendment rights were violated. In pertinent part, he claimed the "search" of the SUV was outside the scope of the warrant because the warrant did not specify curtilage or vehicles. He also argued there was no reasonable suspicion to sniff the SUV or even if there was reasonable suspicion for the sniff and the subsequent alert resulted in probable cause to believe the SUV contained contraband, then the automobile exception to the warrant requirement did not apply. He claimed the latter exception required the state to show exigent circumstances but noted he was handcuffed and the owner of the vehicle was not present.

**{¶12}** The state's response noted the vehicle was not listed in the warrant because its significance was unknown before presenting the warrant application to the judge. The state argued curtilage is inherent in a search warrant of a house, which represents the greater intrusion. In any event, the state urged when officers are lawfully

on property conducting a search with a warrant, a free air sniff of a vehicle is permissible. It was pointed out a drug dog sniff is not a search and the alert gave rise to probable cause to search the SUV under the automobile exception without a showing of exigency, which is inherent due to the nature of the apparent mobility of the vehicle.

{¶13} At the suppression hearing, the detective and the K9 officer both testified. In addition to the facts recited above, the detective explained he did not mention the SUV in applying for the search warrant because he did not learn of its significance until his weekend surveillance after the warrant had already been issued. (Supp.Tr. 19-20, 28, 37, 43, 45). He pointed out Appellant was known for using multiple vehicles registered to himself or his wife and multiple rental or borrowed vehicles, along with riding in other people's vehicles, including during a recent traffic stop which turned into a drug case. *Id.* at 12-13, 37-38. The detective explained Appellant's practices made it "hard for law enforcement to keep up with." *Id.* at 38. When asked why he did not list curtilage in applying for the search warrant, he replied it was not standard operating procedure for his department to list curtilage separately in a search warrant. *Id.* at 39-40.

{¶14} In addition to the facts recited above regarding the drug dog, the K9 officer testified about the training and certifications he and his dog received and their procedures. *Id.* at 48-71; (St.Ex. 2-3). The dog was certified in detecting various substances (and their derivatives) including cocaine but was not yet trained in fentanyl detection. *Id.* at 51. The officer noted after the dog alerted on the SUV, the dog was deployed to the pickup truck and did not alert. *Id.* at 61. Next, they entered the house where the dog alerted on some spots, but additional drugs were not recovered; he believed the drugs had already been removed from those spots and pointed out the odor of drugs can linger. *Id.* at 62-63.

{¶15} The trial court denied the suppression motion. After setting forth factual findings, the court concluded the use of a dog to sniff a lawfully detained vehicle was not a search or violation of the Fourth Amendment or Ohio Constitution and the resulting alert by the dog provided probable cause justifying an automobile search. (2/4/25 J.E.).

{¶16} On July 8, 2025, preserving his right to appeal the suppression decision, Appellant pled no contest to the tampering with evidence charge in count one (a third-degree felony), the three possession charges in counts four, five, and seven (all first-degree felonies), and the money forfeiture specification attached to the latter three counts

(but not the major drug specification). The state agreed to dismiss the three trafficking counts. After the court imposed consecutive sentences on the first-degree felonies and a concurrent sentence on the third-degree felony, the total sentence imposed was 15 to 19.5 years. (9/17/25 J.E.). Appellant filed the within timely notice of appeal.

ASSIGNMENT OF ERROR

{¶17} Appellant's assignment of error contends:

"The trial court abused its discretion by denying Appellant's October 16, 2024 Motion to Suppress Evidence that was obtained from an unlawful search and seizure."

{¶18} We review the trial court's decision on a motion to suppress under a mixed standard of review. *State v. Turner*, 2020-Ohio-6773, ¶ 14. Factual portions of the decision are upheld if they are supported by competent, credible evidence. *Id.* The trial court occupies the best position from which to evaluate evidence and weigh the credibility of witnesses. *State v. Mayl*, 2005-Ohio-4629, ¶ 41. Legal questions are reviewed de novo. *Turner* at ¶ 14. We thus make an independent determination as to whether the facts satisfy the relevant legal standard. *Mayl* at ¶ 41.

{¶19} The Fourth Amendment provides: "The right of the people to be secure in their persons, house, papers, and effects, against unreasonable searches and seizes, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularity describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV; *accord* Ohio Const., art. I, § 14; *see also* Crim.R. 41(C)(2) ("If the judge is satisfied that probable cause exists, the judge shall issue a warrant identifying the property to be seized and naming or describing the person or place to be searched").

{¶20} Appellant begins his Fourth Amendment argument by stating the "search" of the SUV was outside the scope of the search warrant. He cites a case stating a car cannot be searched merely because the owner was arrested in his house and a car was in the driveway at the time. *Coolidge v. New Hampshire*, 403 U.S. 443, 460-464 (1971). We point out the cited case was not about whether a vehicle search was outside the

scope of a valid search warrant. *Id.* at 446-453 (where the search warrant was invalidly issued by the attorney general acting in the case rather than a neutral magistrate).[2]

**{¶21}** Appellant cites an Ohio appellate case upholding the search of a vehicle in an attached garage where the warrant specifically authorized a search of the residence *and curtilage*. *State v. Simpson*, 2002-Ohio-1300 (2d Dist.) (finding the attached garage was not only curtilage but was also part of the residence), citing, *e.g., State v. Tewell*, 9 Ohio App.3d 330, 331 (2d Dist. 1983) (warrant to search a dwelling "and surrounding curtilage" held to include the right to search a vehicle in the driveway next to the house). Appellant also cites a case stating officers could not search the defendant's car parked on a public street under a search warrant authorizing the search of the residence, garages, and curtilage. *State v. Ballez*, 2010-Ohio-4720, ¶ 3, 23 (6th Dist.).

**{¶22}** From these examples with curtilage in the warrant language, Appellant assumes the cases would have excluded a vehicle from the scope of the search warrant if the warrant referred to the address and residence without also either referring to the curtilage or to vehicles. Yet, those cases were not presented with an issue of whether the vehicle search would have been authorized in the absence of the specific curtilage or vehicle language in the warrant.

**{¶23}** The state points out the search of a car in the driveway next to a residence that is listed in a search warrant is a much lesser intrusion than the entry into the residence itself, which was authorized by the warrant. The state concludes a home's curtilage is inherent in any search warrant granting access to a private residence, citing a reported common pleas court case upholding the search of a shed even though curtilage was not specified in the warrant. *See State v. Grevas*, 2007-Ohio-7258 (C.P.).

**{¶24}** In *Grevas*, the trial court concluded if the defendant's argument necessarily agrees the item was in the curtilage or if the evidence shows the location of the item satisfies the test for curtilage, then "the residential address provided in a search warrant implicitly includes the curtilage of the residence" as "the curtilage is inseparable for

---

[2] Pointing out the search warrant was previously found by another judge to be validly issued by a neutral detached judge upon probable cause, the state alternatively cites law on the good faith exception to the exclusionary rule. *See, e.g., State v. Wilmoth*, 22 Ohio St.3d 251 (1986), syllabus (even if a warrant issued by a neutral detached magistrate is later ruled invalid, the exclusionary rule is not to be applied where the officers conducting the search acted in objectively reasonable, good faith reliance on the warrant).

privacy purposes from a residence identified in a search warrant." *Id.* at ¶ 7-10 (observing the defendant in fact believed/argued the building was in his curtilage and alternatively applying a curtilage analysis), applying *United States v. Dunn*, 480 U.S. 294, 301 (1987) (factors for evaluating a home's curtilage to ascertain whether the area is so intimately tied to the home that it falls within the home's "umbrella" of Fourth Amendment protection include proximity, enclosure, protection from view, and nature of use). The *Grevas* case adopted federal and state appellate cases supporting the conclusion. *Id.* at ¶ 7.

**{¶25}** For instance, the Eleventh District upheld the search of a barn because "the residential address provided in the warrant implicitly included the curtilage of that residence." *State v. Dalpiaz*, 2002-Ohio-7346, ¶ 16-18 (11th Dist.) (where the search warrant contained the property address and did not specify the curtilage or the barn, the court said there was no evidence the barn was outside the curtilage and thus it was covered by the warrant for the address), adopting *United States v. Gorman*, 104 F.3d 272 (9th Cir. 1996).

**{¶26}** In the Ninth Circuit's *Gorman* case, the federal appellate court held the search of the curtilage was authorized because the curtilage was inseparable for privacy purposes from the residence identified in the warrant. *Gorman* at 274-275 (upholding the search of the curtilage where a jar was found partly buried under lawn chairs), citing, *e.g., State v. Vicars*, 207 Neb. 325, 330 (1980) (outbuilding in the curtilage of a described dwelling house may be searched under the same warrant); *see also United States v. Biles*, 100 Fed.Appx. 484, 491 (6th Cir. 2004) ("a warrant for the search of a specified residence or premises authorizes the search of auxiliary and outbuildings within the curtilage"), citing, *e.g., United States v. Campbell*, 256 F.3d 381, 390 (6th Cir. 2001) (although the search warrant was for the residence, "since all of the buildings at [number] Jennings Drive were within the curtilage of the property, there was no need to demonstrate probable cause to search each building on the property").

**{¶27}** Even the case cited by Appellant observed many courts have ruled that vehicles were within the scope of a search warrant when it referred to the premises at an address, even if it failed to specify curtilage or vehicles. *Tewell*, 9 Ohio App.3d at 331, citing, *e.g., United States v. Napoli*, 530 F.2d 1198 (5th Cir. 1976). In the cited Fifth Circuit case, the federal appellate court upheld the search of a vehicle parked in the driveway

where the search warrant referred to "the premises known as [number] Napoleon Avenue" even though the warrant proceeded to describe "a large, multiple-story, wooden-frame residential dwelling." *Napoli* at 1200 (the particularization of the residence did not limit the reference to the place related to the address).

**{¶28}** Likewise, the Tenth Circuit held: "A search warrant authorizing a search of a certain premises generally includes any vehicles located within its curtilage if the objects of the search might be located therein." *United States v. Gottschalk*, 915 F.2d 1459, 1461 (10th Cir. 1990). In that case: the search warrant allowed the search of the suspect's residence; the officers searched a car in the driveway; the car did not belong to the suspect who owned the premises to be searched; and the car was inoperable due to part of the engine being noticeably missing, which the police knew prior to the search of the vehicle's trunk. *Id.* at 1459-1462. The federal appellate court upheld the search of the vehicle because the car or its keys reasonably appeared to be under the suspect's control at the time the search commenced. *Id.* at 1461-1462; *see also United States v. Patterson*, 278 F.3d 315, 318 (4th Cir. 2002) (where the warrant authorized the search of "the property or premises known as . . . [number] Haden Avenue, Richmond, Virginia," vehicles at the property that "reasonably appear" to be controlled by the subject resident of the address were in the scope of the warrant).

**{¶29}** Here, the search warrant ordered the search of the "place of [specified number] Cadmus St., East Liverpool, Ohio . . . " It also specified the right to unlock all containers and "areas within the premises" where evidence may reasonably be kept (and to use a locksmith if necessary). Under the case law we reviewed above, the mere fact that the warrant then provided some description of what the house at the address looked like did not limit the scope of the warrant to only the house and thereby exclude adjacent bushes or driveway clearly within the curtilage of the residence and constituting part of the premises or the "place" to be searched.

**{¶30}** As the state points out, Appellant acknowledges the SUV was in the curtilage of the house. The testimony described the SUV as being parked in the driveway (backed in) "right next to the house . . . right next to where the house began" in "[v]ery close proximity" and "[w]ithin feet of the home." (Tr. 18, 59). A photograph was admitted

showing the driveway and the house; as the detective pointed out, the concrete of the driveway runs right up to the house. (St. Ex.1); (Tr. 36).

**{¶31}** Regardless, the police did not just dive into a search of the vehicle based on the search warrant, and the testifying officers did not justify the vehicle search based on the warrant. *Rather, the police searched the vehicle only after a trained drug detection dog alerted on it.* Consequently, the scope of the search warrant is not a necessary argument the state must win in this case.

**{¶32}** *The use of a drug dog to sniff the exterior of an item is not a search where the officers are lawfully present.* For instance, the United States Supreme Court has pointed out the use of a drug dog to sniff the exterior of a container was not a search where police were lawfully present. *United States v. Place*, 462 U.S. 696, 707 (1983) (luggage located in a public place). This concept extends to a drug dog's sniff of the exterior of a *vehicle* where the K9 officer is "lawfully present at the location where the sniff occurs" in which case the sniff is not a "search" covered by the Fourth Amendment and thus reasonable suspicion of drugs is not required (at least where the item is not being detained or detained longer than other circumstances permitted, which is discussed further below). *State v. Bryner*, 2018-Ohio-3215, ¶ 9 (9th Dist.) (motel guests do not have a reasonable expectation of privacy in the motel's parking lot and thus police may use a drug dog to conduct a sniff of the exterior of a non-detained car in the lot), citing, *e.g., United States v. Reed*, 141 F.3d 644, 650 (6th Cir. 1998) (upholding a sniff inside an apartment where the K9 officer was legally present due to hot pursuit of a burglar or due to the defendant's consent).

**{¶33}** "As long as the observing person or the sniffing canine are legally present at their vantage when their respective senses are aroused by obviously incriminating evidence, a search within the meaning of the Fourth Amendment has not occurred." *Reed* at 649. In other words, "use of a dog to sniff the exterior of a vehicle that is lawfully detained does not constitute a search that violates the Ohio Constitution or the Fourth Amendment of the U.S. Constitution." *State v. Underwood*, 2004-Ohio-504, ¶ 14 (12th Dist.) (upholding the search of a vehicle parked in the driveway during the execution of a search warrant after a drug dog alerted on the vehicle, even though the officers knew the vehicle did not belong to the homeowner), citing *Reed* at 650.

**{¶34}** Here, the officers were lawfully present in the portion of the driveway next to the house where the SUV was located as they were in the process of searching the house pursuant to a warrant. Appellant's brief recognizes the state would alternatively argue that whether the scope of the search warrant covered the vehicle search was irrelevant due to the alert by the dog (which provided probable cause to search the vehicle).

**{¶35}** Appellant directly proceeds to contest the applicability of the automobile exception *without specifically contesting the propriety of conducting the free air sniff on the vehicle while lawfully on the property.* That is, he believes the search cannot be upheld under the automobile exception and argues the scope of the search warrant will not save the search if it violated the automobile exception but does not specify an argument that a free air sniff while lawfully present is violative of the constitution.

**{¶36}** Nevertheless, before proceeding to his argument on the automobile exception, we make various observations. A police officer may conduct an investigatory detention when the officer has reasonable suspicion of a criminal violation; probable cause is not required for such a stop. *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968). Where a detention of a vehicle is validly occurring and not unreasonably prolonged, a free air sniff of the exterior of the vehicle by a drug dog is not a search and does not trigger Fourth Amendment protection. *See Illinois v. Caballes*, 543 U.S. 405, 407-410 (2005) (involving a traffic stop). Thus, no reasonable suspicion of drugs is required for a sniff if it does not prolong a stop. *Id.*

**{¶37}** Even if a detention is measurably prolonged by the dog's arrival and/or deployment, the sniff is still lawful if the officer had reasonable suspicion the detained car contained drugs. *Id.*; *Rodriguez v. United States*, 575 U.S. 348, 350-351, 354-355 (2015); *see also State v. Batchili*, 2007-Ohio-2204, ¶ 17-19 (where the Ohio Supreme Court noted the totality of circumstances are considered, rather than determining whether each circumstance would be suspicious on its own). The reasonable suspicion test is less than probable cause; it looks at the specific "articulable" facts and any rational inferences to be derived from those facts to ascertain if there is a particularized suspicion (and more than an inchoate hunch). *Terry* at 21, 27.

{¶38}  Appellant was detained for the execution of the search warrant on both his house and his person, and drugs were located both in the house and on his person, justifying his arrest.  He would not have been permitted to drive away had he tried, and his wife was not present waiting to take the vehicle that was already parked in the driveway when officers lawfully arrived and when the K9 unit thereafter arrived.

{¶39}  Moreover, the officers were lawfully present in the driveway right next to house, which was also the access point to the front porch and front door.  The dog was called to the scene to sniff the residence listed in the search warrant due to the hiding spots in floors and walls.  The searchers were still lawfully combing the inside of the house when the dog arrived; testimony indicated various officers had to be called out of the house for the dog's deployment.  The free sniff of the SUV on the dog's way into the house took less than one minute.  The execution of the search warrant was not delayed by the sniff of the SUV.

{¶40}  In any event, there was reasonable suspicion to merely detain the vehicle, even if someone would have been waiting to drive it away.  Among other facts recited in our Statement of the Case above, Appellant was being investigated as a major drug dealer in the process of having his house and person searched for drugs pursuant to a search warrant.  Just prior to the free air sniff, drugs were discovered in his toilet, in a hidden compartment under his bathroom floorboards, and on his person along with large amounts of cash.  Over the weekend preparation for the execution of the warrant, Appellant was seen sitting in the driver's seat of the SUV with the door open facing guests on his front porch.  He was known to use a multitude of ever-changing vehicles to conduct his business.  The totality of the circumstances demonstrated more than an inchoate hunch the SUV contained contraband but gave rise to a reasonable particularized suspicion warranting the brief K9 sniff of the vehicle even if the vehicle was considered to be in a state of detention.

{¶41}  But again, there is no indication the car was truly detained on the property during the sniff, which was conducted while the police were lawfully present on the premises and lawfully detaining Appellant.  And regardless, Appellant does not dispute the vehicle could have been detained, as he suggested it should have been guarded by

officers while another officer left to obtain a search warrant. For the various reasons expressed above, the free air sniff of the SUV was lawful.

{¶42} Next, once a drug dog alerts on the vehicle for the presence of drugs, the police have probable cause to search the vehicle where the totality of the circumstances would lead a reasonably prudent person to believe a search would reveal contraband. *Florida v. Harris*, 568 U.S. 237, 248 (2013). A police officer has probable cause to conduct a search when the facts available to him warrant a person of reasonable caution to believe contraband or evidence of a crime is present. *Id.* at 243 (on trusting the dog's alert). Probable cause merely requires a "fair probability" based on practical common sense and the totality of the circumstances, which give rise to a belief by a reasonable, prudent person (not a legal technician). *Id.* at 244 (the concept fluid and dependent on the particular scenario).

{¶43} Here, we incorporate our Statement of the Case and the facts reviewed in discussing reasonable suspicion, including that drugs were recovered from the toilet and hidden compartments in the house and from the person of Appellant, who was seen sitting in the car in the driveway the prior weekend. In addition, we emphasize the dog alerted and "bracketed" a particular spot between the doors after a quick trot around the vehicle. Evidence of the dog's experience, training, certification, and success was provided. Moreover, the keys to the vehicle were recovered from among the contents of Appellant's pocket after he claimed did not have knowledge of the location of the keys because the vehicle belonged to his wife. The totality of the circumstances in this case would lead a reasonably prudent person to believe there was a fair probability a vehicle search would reveal contraband after the dog's alert on the SUV.

{¶44} Next, we note although the drugs found in the vehicle after the alert were pressed pills made of fentanyl and the dog was not yet certified to detect fentanyl, the K9 officer pointed out odors may linger in a spot used to store drugs (and cocaine was located in the house). *Harris* at 249 (where the United States Supreme Court rejected the logic behind the defense argument about a dog alert followed by a search that did not reveal a substance the dog was trained to detect). As an example, the K-9 officer noted the dog alerted on spots inside the house where drugs had already been removed by the officers executing the search warrant. There was no special circumstance giving the K-9 officer

reason to distrust the dog's alert. *Id.* "And still more fundamentally, we do not evaluate probable cause in hindsight, based on what a search does or does not turn up." *Id.* (noting the subject's regular touching of meth would transfer the odor to his vehicle, upon which a trained drug dog is expected to alert, regardless of whether the type of drugs for which the dog was certified were then recovered from the vehicle).

**{¶45}** "Once a law enforcement officer has probable cause to believe that a vehicle contains contraband, he or she may search a validly stopped motor vehicle based upon the well-established automobile exception to the warrant requirement." *State v. Moore*, 90 Ohio St.3d 47, 51 (2000) (and then evaluating the general exigency exception in regards to the search of the defendant's person), citing *Maryland v. Dyson*, 527 U.S. 465, 466 (1999) (the automobile exception does not have a separate exigency requirement). Based upon probable cause to search a vehicle, the police may open all packages and containers in the car "capable of concealing the object of the search" (regardless of the owner of the containers). *Wyoming v. Houghton*, 526 U.S. 295, 302, 307 (1999).

**{¶46}** Although Appellant cites *Moore* and *Dyson*, he insists the state must specifically demonstrate exigency to apply the automobile exception and points to the fact he was handcuffed and the owner of the vehicle was not present at the scene. However, when the *Moore* Court was speaking of exigency, it was in the context of evaluating the search *of a person*, not the search of the vehicle. *Moore* at 51-52.

**{¶47}** In mentioning the exigency justification based on the inherent mobility of a vehicle, the *Moore* Court was speaking of a background reason for treating vehicles with less respect than a home and the creation of the automobile exception. *Id.* at 52; *see also State v. Green*, 2023-Ohio-4503, ¶ 18, 22-23 (7th Dist.), citing *Moore*, *Dyson*, and *California v. Carney*, 471 U.S. 386, 391-392 (1985) (the well-established automobile exception to the warrant requirement was created based on the ready mobility of automobiles, the lesser expectations of privacy surrounding an automobile, and also the pervasive regulation of vehicles capable of travel on public roads). Earlier in the opinion, the Ohio Supreme Court had already confirmed the legality of the search *of the vehicle* under the automobile exception based on probable cause to believe it contained

contraband and only held the search of the person required exigency. *Moore* at 51, citing *Dyson* at 466.

{¶48} In discussing the exception to the warrant requirement for searches of vehicles, the United States Supreme Court specified:

> under our established precedent, the automobile exception has no separate exigency requirement . . . in cases where there was probable cause to search a vehicle, a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained . . . the automobile exception does not have a separate exigency requirement: If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more . . . probable cause that the car contained contraband . . . alone satisfies the automobile exception to the Fourth Amendment's warrant requirement . . .

*Dyson*, 527 U.S. at 467. In accordance with these cases, there is no requirement for the state to demonstrate exigency by showing someone was likely to drive the vehicle away or remove its contents, as a vehicle's ready mobility *is inherently recognized by law as the exigency*. *Green* at ¶ 18, 22-23, citing *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996).

{¶49} Accordingly, the following arguments proffered by Appellant are irrelevant: he was unable to make a break for the SUV because he was handcuffed; his wife who owned the vehicle[3] was not present to drive it away; and the detective could have left officers to guard the vehicle while taking time to obtain another warrant. *See id; see also Underwood*, 2004-Ohio-504, at ¶ 18-19 (12th Dist.) (rejecting the argument "that the automobile exception does not apply because he could not drive his vehicle from the scene while he was being held inside the residence during execution of the search warrant" and holding, "The immobilization of the vehicle or a low probability of its being

---

[3] The defendant stipulated he was married to the owner of the SUV in his driveway when arguing he had standing to protest the vehicle search but then attempted to use his wife's ownership of the vehicle as an item disallowing the application of the various search and seizures doctrines to the case.

moved or evidence being destroyed does not remove the officers' justification to conduct a search pursuant to the automobile exception").

**{¶50}** Furthermore, despite defense counsel's questions to the detective at the suppression hearing (about whether he knew the vehicle was not mobile and had transmission problems), an attorney's questions are not evidence. *See, e.g., Shaver v. Peters*, 2023-Ohio-1097, ¶ 46 (6th Dist.) ("Obviously, unsupported assertions made by trial counsel in questions to a witness do not constitute evidence"); *State v. Siller*, 2009-Ohio-2874, ¶ 58 (8th Dist.) ("of course, it goes without citation, that the questions of counsel are not evidence"); *see also Corp. Exch. Bldgs. v. Franklin Cty. Bd. of Rev.*, 82 Ohio St.3d 297, 298 (1998) ("statements of counsel are not evidence"). In answering those questions, the detective testified he did not have information on this claim within the attorney's question.

**{¶51}** No evidence was presented by the defense on the topic of immobility[4], and no evidence was otherwise elicited that would have indicated to the officers at the scene that the SUV was immobile. *See. e.g., State v. Bazrawi*, 2013-Ohio-3015, ¶ 25 (10th Dist.) (finding the officer possessed circumstantial evidence of mobility and no reason to make assumptions against the inherent mobility of a vehicle where they saw the defendant exit and lock the vehicle but did not see him drive it there). We note the SUV was not the vehicle with a tarp over it parked in the one-lane driveway behind the house. The location of the SUV was in the driveway closer to where the drive meets the street and parked right next to the house. The surveilling detective noticed the car in the driveway when passing by the house over the weekend after obtaining but before executing the search warrant. He did not see the SUV occupying the driveway before obtaining the Thursday search warrant. The officers found the keys in Appellant's pocket and *those keys started the vehicle*.

**{¶52}** Circumstantial evidence inherently possesses the same probative value as direct evidence. *State v. Treesh*, 90 Ohio St.3d 460, 485 (2001). There is no requirement

---

[4] Even where a defendant presents a witness's testimony on actual immobility at the moment of the execution of the search warrant, the credibility of the defendant's evidence would be a matter for the fact-finder at suppression and, even then, would not necessarily affect the reasonableness of the officer's viewpoint concerning the apparent mobility of the vehicle at the time of the search (even assuming arguendo the vehicle was not covered by the search warrant).

that an officer must drive a car before using the automobile exception to search it and no requirement an officer be able to testify with absolute certainty of potential mobility when a suppression motion is filed. In sum, there was competent, credible evidence allowing the trial court to conclude the automobile exception to the warrant requirement allowed the search of the vehicle after the drug dog alerted on the vehicle.

{¶53} For the foregoing reasons, Appellant's assignment of error is overruled, and the trial court decision denying the suppression motion is affirmed.

Waite, P.J., concurs.

Hanni, J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed.  Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**